CHARLES DEVLIN, Appellant, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents, et al., Appellants.

Where an executory contract is not necessarily personal in its character and can, consistent with the rights and interests of the adverse party, be fairly and sufficiently executed as well by an assignee as by the original contractor, and where the latter has not disqualified himself from a performance of the contract, it is assignable.

The assignment by the contractor of a contract with a municipal corporation for work, is not against public policy so long as the corporation retains the personal obligation of the original contractor and his sureties; and in the absence of anything in the statute, which authorized the work, prohibiting it, such an assignment is valid. It does not terminate the contract or authorize the corporation to repudiate it.

Accordingly held, that an assignee of a contract for street cleaning, made between the corporation of the city of New York and another under authority of the act entitled "An act to enable the supervisors of the county of New York to raise money by tax for city purposes, and to regulate the expenditure thereof," etc. (chap. 509, Laws of 1860), could maintain an action against the city for moneys due thereon, and for damages resulting from a repudiation of the contract and an interference on the part of the city authorities preventing a further performance.

Stevens v. Benning (6 De G., M. & G., 223), and Robson v. Drummond (2 B. & A., 303) distinguished.

The expenditure of moneys for cleaning streets and the making of contracts for that work, is embraced within the subject expressed in the title of said act. It is not, therefore, a violation of the provision of the

State Constitution (art. 3, § 16) declaring that no local bill "shall embrace more than one subject, and that shall be expressed in the title."

The damages to which the plaintiff is entitled in such action for the wrongful abrogation of the contract and deprivation of future profits, is the difference between the contract-price and what it would have actually cost to perform the contract.

In ascertaining the cost it is not proper to take into consideration any incidental advantages the contractor might have secured by reason of sub-contracts for parts of the work; and evidence of such contracts is inadmissible.

A party seeking compensation for the loss of gains upon a contract, is not entitled to the benefits of, or to be indemnified against, a contract made with a third person, not in the contemplation of the parties when the original agreement was made.

(Argued September 22, 1875; decided October 5, 1875.)

Appeal from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order reversing a judgment in favor of plaintiff entered upon the report of a referee, and directing judgment absolute in favor of defendant The Mayor, etc.

This action was brought by plaintiff, as assignee of an interest in a contract, made between the corporation of the city of New York and one Andrew J. Hackley under the act (chap. 309, Laws of 1860), for cleaning the streets of said city. The other defendants, it was alleged, claimed interest in the contract, but refused to join as plaintiffs.

By the contract, which was made February 26, 1861, the contractor agreed to sweep all the paved streets, avenues, lanes, alleys, etc., in said city at least once a week, Broadway once every twenty-four hours, and some other streets specified twice a week for the term of five years, and to immediately remove the sweepings.

The contract contained these clauses:

"When the performance of such work is impracticable from the state of the weather the city inspector may, from time to time in writing, designate a later hour for the work, or dispense with the same temporarily; but he shall not

grant such dispensation for a period longer than one week from the date thereof.

"Section 7. The streets shall be kept conveniently passable for vehicles during the winter; and the crosswalks, and all gutters intersecting the same shall be kept clear of snow and ice."

The referee found a substantial performance of the contract up to May 16th, 1863; that there were certain periods of the year when snow and ice accumulated to such an extent that the streets could not be swept or thoroughly cleaned without removing the ice and snow out of the city, at which times the contractor did not sweep once a week, but he kept the streets conveniently passable for vehicles, and kept the crosswalks and gutters at the intersection thereof clear; that on the 16th May, 1863, the corporation forbade, stopped and prevented the contractor from doing any more work under the contract, notified him that the contract was rescinded, and refused to make any further payments thereon.

Upon the trial evidence was offered, on the part of plaintiff, on the question of damages, and received under objection, showing sub-contracts for portions of the work made by the contractor with other parties, and the prices for which the latter contracted to do the same.

The referee directed judgment for a balance found to have been earned under the contract at the time it was so rescinded, and for a sum determined upon as the net profits the contractor might have made under the contract had he been permitted to complete it.

Judgment was entered accordingly.

*Geo. F. Comstock* and *D. C. Cronin* for the appellants. The contract in suit was assignable. (*Meech* v. *Stover,* 19 N. Y., 29; *McKee* v. *Judd,* 12 id., 622; *People* v. *Tioga Com. Pleas,* 19 Wend., 73; Chit. on Con., 98, 274, and notes; *Quick* v. *Ludbarrow,* 3 Bulst., 30; *Marshall* v. *Broadhead,* 1 C. & J., 402; 1 Tyr., 348; 1 M. & W., 423; *Edwards* v. *Grace,* 2 id., 190; *Clinton* v. *Ely,* 10 Me., 292;

*Murray* v. *Hardway*, 56 N. Y., 337; *Ireland* v. *Nichols*, 46 id., 413; *Horner* v. *Wood*, 23 id., 350, 355; *Field* v. *Mayor*, 2 Seld., 179; *Hall* v. *City of Buffalo*, 2 Abb. Ct. App. Dec., 175; *Sears* v. *Conover*, 34 Barb., 330; *McCutcheon* v. *Stbt. Co.*, 13 Penn., 13; *McKyring* v. *Bull*, 16 N. Y., 297; *Cummings* v. *Barkalow*, 4 Keyes, 514; *Schreyer* v. *Mayor*, 39 Super. Ct., 1; *Homer* v. *Wood*, 23 N. Y., 350, 355.) The act under which the contract was made was not unconstitutional. (*People ex rel. Williams* v. *Dayton*, 55 N. Y., 367; *Van Hook* v. *Whitlock*, 26 Wend., 43; *People* v. *Murray*, 5 Hill, 468; *Embury* v. *Conner*, 3 Comst., 511; *Lee* v. *Tillotson*, 24 Wend., 337; *Vose* v. *Cockroft*, 44 N. Y., 415; *Hutson* v. *Mayor, etc.*, 9 id., 163; *Burnham* v. *Acton*, 35 How. Pr., 48; *Fall Brook Coal Co.* v. *Lynch*, 47 id., 522; *People* v. *Kerr*, 37 Barb., 357, 391; *Milhau* v. *Sharp*, 27 N. Y., 611; *People* v. *Havemeyer*, 48 How. Pr., 494; 4 T. & C., 494; 3 Hun, 97; *Baldwin* v. *Mayor*, 2 Keyes, 403–418; *People* v. *Morgan*, 65 Barb., 473; *Williams* v. *Vance*, 24 N. Y., 405; *People* v. *McCann*, 16 id., 58; *In re Vance*, 31 How. Pr., 289; *Burnham* v. *Webster*, 5 Mass., 266; *Pierce* v. *Kimball*, 9 Greenl. [Me.], 54; *Phillips* v. *Mayor*, 1 Hilt., 483; 1 Dil. on Corp., § 388; *Peterson* v. *Mayor*, 17 N. Y., 449; *Canterbury* v. *City of Buffalo*, 33 id., 333; *Harlem Gas Co.* v. *Mayor*, 33 id., 309; *Bailey* v. *Mayor*, 3 Hill, 531; *People* v. *Contracting Bd.*, 27 N. Y., 378; 33 id., 382; *People* v. *Canal Bd.*, 13 Barb., 450; *Fire Alarm Cases*, 55 id., 288; *Conner* v. *Mayor*, 5 N. Y., 285; *S. M. Ins. Co.* v. *Mayor*, 8 id., 241; *Motier* v. *Hilton*, 15 Barb., 657; *De Camp* v. *Everland*, 19 id., 81; *Myers' Case*, 50 N. Y., 504; *Sharp* v. *Mayor*, 9 Abb. Pr., 243; *Joyce* v. *Mayor*, 12 id., 309; *Cutwater* v. *Mayor*, 18 How. Pr., 572; *Sullivan* v. *Mayor*, 47 id., 491; *People* v. *Supr. Orange*, 17 N. Y., 235.)

*Dexter A. Hawkins* for the respondents. Section 4 of chapter 509, Laws of 1860, under which the contract was made, was a local bill. (*People* v. *McCann*, 3 Park., 272; S. C., 16 N. Y., 60; *Williams* v. *People*, 24 id., 405; 2

Burr. L. Dict., 136, 164 ; *People* v. *Hills*, 35 N. Y., 451 ;
*Sun M. Ins. Co.* v. *Mayor*, 8 id., 241 ; *Gaskin* v. *Meek*, 42
id., 186 ; *People* v. *Suprs. Chaut. Co.*, 43 id., 10 ; *Huber* v.
*People*, 49 id., 134, 135 ; *Pullman* v. *Mayor*, 54 Barb., 170.)
The contract was void under the provisions of the Constitu-
tion, as the act embraced more than one subject. (Const.,
art. 3, § 16 ; *Connor* v. *Mayor*, 5 N. Y., 285 ; 2 Sandf.,
355 ; *People* v. *Hills*, 35 N. Y., 449 ; *Sun M. Ins. Co.* v.
*Mayor*, 4 Seld., 253 ; *Town of Fishkill* v. *F. and B.
Plankroad Co.*, 22 Barb., 634 ; *People* v. *Suprs. Chaut.
Co.*, 43 N. Y., 10 ; *Huber* v. *People*, 49 id., 134–136 ;
*People* v. *Allen*, 42 id., 378 ; *Gaskin* v. *Meek*, id., 188 ;
*People* v. *Comrs. Highways*, 53 Barb., 70, 73 ; *People* v.
*O'Brien*, 38 N. Y., 195 ; *Pullman* v. *Mayor*, 54 Barb.,
171, 172 ; *Brady* v. *Mayor*, 2 Bosw., 173 ; 20 N. Y., 312 ;
*Hodges* v. *City of Buffalo*, 2 Den., 110.) The contract
could not be assigned without the consent of the city so as to
give the assignees the right to perform and sue the city.
(*Robson* v. *Drummond*, 2 B. & Ad., 303 ; *Stevens* v. *Ben-
ning*, 1 K. & G., 168 ; 6 De G., M. & G., 223 ; 31 E. L. and
Eq., 286 ; *Bothwick* v. *Purdy*, 3 Mo., 60 ; *Davenport* v.
*Gentry*, 33 Ky., 429 ; *Halbert* v. *Dureng*, 11 id., 4 ; Lit., 9 ;
*Henry* v. *Hughes*, 1 J. J. Marsh., 454 ; *Marcum* v. *Hereford*,
8 Dana, 1 ; *Hayes* v. *Willis*, 4 Daly, 261 ; Ch. on Con., 739 ;
*Horner* v. *Wood*, 23 N. Y., 320–326.) If the action could be
sustained by the assignees, it must be brought in the name
of the real parties in interest, or parties authorized by statute
to bring it. (*Sedgwick* v. *Cleveland*, 7 Paige, 287, 290 ;
*Mills* v. *Hoag*, id., 21 ; *Grant* v. *Van Schoonhoven*, 9 id.,
257 ; Cowen's Treatise [2d ed.], 557 ; *Ackley* v. *Tarbox*, 29
Barb., 517 ; *Alston* v. *Jones*, 3 Barb. Ch., 397 ; *Sherman* v.
*Burnham*, 6 Barb., 412.) Plaintiff was not entitled to
recover damages. (*Messmore* v. *N. Y. Shot and Lead Co.*,
40 N. Y., 422 ; *Cassidy* v. *La Fevre*, 45 id., 562 ; *Griffin* v.
*Colver*, 16 id., 489 ; *Masterton* v. *Mayor of B.*, 7 Hill, 74, 75 ;
*St. John* v. *Mayor*, 6 Duer, 315 ; 3 id., 406 ; 9 Wend., 325 ;
2 Bing. N. C., 281 ; 1 Ld. Raym., 486 ; Sedgw. on Meas.

Dam., 364 [2d ed.], 421 [4th ed.]; *Lawrence* v. *Wardwell*, 6 Barb., 423; *N. Y. and N. H. R. Co.* v. *Story*, id., 419; *Clark* v. *Mayor*, 3 id., 298; *Story* v. *N. Y. and N. H. R. Co.*, 2 Seld., 90.)

ALLEN, J.    The referee has found the making of the contract as alleged, the performance thereof by Hackley, from the making thereof in February, 1861, until May, 1863, an ability, readiness and offer by him to perform the contract for the unexpired term thereof, and that he was, in May, 1863, without cause, ejected by the respondents from the work, and by them prevented from proceeding in the performance of the agreement.    He has also found the amount due and unpaid for work actually done at the time of the interference by the respondents, and the damages sustained by the parties in interest by reason of the breach of the contract by the respondents.    The referee has not found that the contract was procured by bribery or fraud, or any fact set up by the respondents as an affirmative defence to the action, and was not requested by the respondents to find any such fact, or any fact.    The Court of Common Pleas of the city of New York, from whose judgment this appeal is taken, found no error in the findings and conclusions of fact by the referee, but reversed his judgment solely for errors of law. The conclusions of the referee upon the evidence, and his findings of fact, not disaffirmed by the court below in reversing his judgment, are therefore not reviewable by this court. We are concluded upon every question of fact by the findings of the referee and the judgment of the court of original jurisdiction.    (Code, §§ 272, 511.)

Upon the adjudged facts the plaintiff and the defendants, appellants, the assignees of Hackley were entitled to recover unless there is some legal impediment, and were entitled to retain the judgment given by the referee, unless for some reason no action at law could be maintained for the work actually performed, or upon the agreement for a breach thereof, or some material error was committed by the referee upon the trial to the prejudice of the respondents.

But two objections to the recovery against the city, the present defendant, were considered by the court below in the opinion annexed to the record before us, and they being regarded as insuperable and fatal to the action, the judgment of the referee was reversed and judgment absolute given for the city. These objections were : First, that the contract between the city and Hackley was not assignable, and that the assignment by the original contractor, of itself, terminated the contract and justified the action of the city authorities in refusing longer to be bound by it; and, secondly, that the act of the legislature, pursuant to which the contract was made, was unconstitutional, and that therefore no cause of action could arise in virtue of any contract, or agreement made under it, or for services rendered in its performance.

The first objection, if well taken, was not necessarily fatal to the action, but, at most, would only have authorized the sending of the case back for a retrial. It might have been waived by the city. There was nothing in the spirit or letter of the statute authorizing the contract, or public policy, to prohibit the assignment, with the assent of the city authorities, so long as the city retained the personal obligation of the original contractor and his sureties for its faithful performance. There was evidence which would have authorized — and had he been called upon, would have required — the referee to find a waiver of all objections, if not an express assent to the assignment now claimed to be fatal to this action, and to any recovery for work done.

Aside from dealings with, and payments to, the assignees, the common council, in their proceedings, directly recognize the fact that the interest of Hackley in the contract had passed into other hands, and in giving the notice and assigning the reasons for terminating the contract, no notice is taken of the assignment, but the sole reason alleged is the non-performance of the agreement by the contractor. The city, by the acts of its agents, waived the objection that the contract was not assignable, and the reason assigned for terminating the contract has been found to be untrue in fact.

(*Murray* v. *Harway*, 56 N. Y., 337; *Ireland* v. *Nichols*, 46 id., 413.)

There was certainly no reason why there should not have been a recovery of the moneys actually earned, even if the contract had been terminated for every other purpose. But it is palpable that the city had no thought of objecting to the further prosecution of the contract for the reason that it had been assigned, or that it was not assignable. The question, however, whether the assignment by the original contractor terminated the contract, or authorized the refusal of the city longer to be bound by it, still remains to be considered, as the waiver has not been found by the referee. An assignment by the contractor of the amounts which would have become due from the city from time to time, made before the doing of the work or the performance of the conditions upon which the payments depended, would, under the liberal rule permitting the assignment of choses in action now prevailing, be valid. Expectancies, as well as existing rights of action, may be assigned, and the rights of the assignees will be protected and enforced at law. (*Field* v. *Mayor*, *etc.*, 2 Seld., 179; *Hall* v. *Buffalo*, 2 Abb. Ct. of App. Dec., 301.) An assignment may include all contingent and incidental benefits or results of an executory contract, as well as the direct fruits or earnings under it, and thus entitle the assignee to the damages resulting from a violation of its terms. The right of action for a breach of the contract, resulting in pecuniary loss to the contractor, would survive to the personal representatives of the aggrieved party, and that is one test of the assignability of contracts and choses in action. (*Byxbie* v. *Wood*, 24 N. Y., 607; *McKee* v. *Judd*, 2 Kern., 622; *Zabriskie* v. *Smith*, 3 id., 322.) In principle it would not impair the rights of the assignee, or destroy the assignable quality of the contract or claim, that the assignee, as between himself and the assignor, has assumed some duty in performing the conditions precedent to a perfected cause of action, or is made the agent or substitute of the assignor in the performance of the contract. If the service to be

rendered or the condition to be performed is not necessarily personal, and such as can only with due regard to the intent of the parties, and the rights of the adverse party, be rendered or performed by the original contracting party, and the latter has not disqualified himself from the performance of the contract, the mere fact that the individual representing and acting for him is the assignee, and not the mere agent or servant, will not operate as a rescission of, or constitute a cause for terminating the contract. Whether the agent for performing the contract acts under a naked power, or a power coupled with an interest, cannot affect the character or vary the effect of the delegation of power by the original contractor. Hackley, the original contractor, was at no time discharged from his obligations to the city, nor was he disqualified for the performance of the contract; but was at all times in a position to perform his part of this agreement, facts which distinguish this case from *Stevens* v. *Benning* (6 De G., M. & G., 223) and *Robson* v. *Drummond* (2 Barn. & Ad., 303). *Stevens* v. *Benning* is distinguished from the present by the additional circumstances that the contract in the case cited was in its nature personal, and was made in reference to the character and facilities of the contracting firm as a publishing house, and was in the nature of a partnership in so far as it provided for a division of the profits of the work to be published. In *Robson* v. *Drummond* the defendant had agreed to pay annually in advance for the use of the carriage to be furnished by Sharpe, a coachmaker, and was not bound, after notice of his withdrawal from and assignment of the contract to Robson, to trust to the ability or integrity of the assignee; and the court also held that the contract was one for the personal service of Sharpe, and that the defendant was entitled to his judgment and taste to the end of the contract. It is not disputed that in all cases when the executor or administrator would succeed to the rights and liabilities of a deceased party to a contract, the contract is assignable by the act of the parties, the personal representatives of a decedent being

regarded but the legal assignee upon whom the law devolves the rights and obligations of their testator or intestate. In one case in which the executory obligations of deceased parties have been sought to be enforced against their personal representative, the question has been said to be one of construction depending upon the intention of the parties, and that we are without any well defined rule on the subject. (*Dickinson* v. *Calahan's Admrs.*, 19 Penn. St. Rep., 227.) In some cases in which executors and administrators have assumed the contracts of their testators or intestate, and after performance sought to recover the stipulated compensation, the question has been one of pleading rather than of principle. (*Edwards* v. *Grace*, 2 M. & W., 190.) The assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed rather than the supposed intent of the parties, except as that intent is expressed in the agreement. Parties may, in terms, prohibit the assignment of any contract and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations. But when this has not been declared expressly or by implication, contracts other than such as are personal in their character, as promises to marry or engagements for personal services requiring skill, science or peculiar qualifications, may be assigned, and by them the personal representatives will be bound. In *Hyde* v. *Windsor* (Cro. Eliz., 552) it was said that executors are bound by all covenants of their testator, whether named or not, "unless it be such a covenant as is to be performed by the person of the testator, which they cannot perform." If the contract be personal and the performance of the party himself be the essence thereof, it neither devolves upon his representatives, nor can it be assigned. (*White's Exrs.* v. *Commonwealth*, 39 Penn. St., 167.) When the contract is executory in its nature, and an assignee or personal representative can fairly and sufficiently execute all that the original contractor could have done, the assignee or representative may do so and have the benefit of

the contract. *Quick* v. *Ludbaum* (3 Bulst., 30) adjudged a contract to build a house binding upon the executors. This case has been criticised, and sometimes its authority questioned, but the modern cases in England and the decisions of the courts of this State are in harmony with it. It is cited with approval in *Siboni* v. *Kirkman* (1 M. & W., 417), and in many other cases. The act of God in the death of the party does not dissolve the contract or excuse performance, except in the case of a contract requiring personal service, and then the law will imply an exception. In the case last referred to executors were held entitled to enforce a contract for the exchange of pianos made by their testator twenty years before the bringing of the action. There may be cases in which the executor may not be compellable to perform a contract of his testator, and yet may elect to do so and entitle himself, in his representative capacity, to the compensation. *Marshall* v. *Broadhurst* (1 Cr. & J., 403 ; S. C., 1 Tyrwhitt, 348), was for work and materials in building a house which the testator of plaintiff had agreed to build, but died before the work was begun and the plaintiffs were held entitled to recover. The court say, that in case of such a contract, if the executors do not go on they will be liable to damages for not completing the work, and if they go on they may recover as executors. (See, also, *Wentworth* v. *Cock*, 10 A. & E., 42.) In the latter case Pattison, J., refers to a case at Liverpool where a contract to build a light-house was held to be personal and therefore not assignable, but solely on the ground of its being a matter of personal skill and science, clearly implying that but for that element in the contract it would have been assignable. *Sears* v. *Conover* (34 Barb., 331) was not unlike *Wentworth* v. *Cock*, except that the action was an action by the assignee of an executory contract for non-performance by the other party. Within the principle of the adjudications in this State this contract was assignable. The executor of the contract would have been bound to perform it to entitle him to recover what had been earned, and to prevent an action for non-performance. It was a contract

not capable of being performed in person by Hackley. At most, he could only employ workmen and appoint agents and overseers of the work. The work did not require or call for the exercise of any peculiar skill, science or experience. It was by law all to be done under the directions of the city inspector, who may be supposed to have been in possession of all the local knowledge and experience essential to the general direction of the work. It was merely the servile labor of sweeping and cleaning the streets, and removing the garbage as specified in the agreement and under the general supervision of the city inspector, that the contractor engaged for. Work upon the canals of this State, either in their repair or construction, calls for more of skill and scientific knowledge, as well as of experience, than this work could call . for, and yet contracts for that class of work have been recognized as assignable by the legislature and by the courts, and the rights of assignees protected and enforced. (*Munsell* v. *Lewis*, 2 Den., 224.) So contracts for the labor of convicts in the State prisons have been expressly held assignable, and on the ground that notwithstanding the intimate personal relations that must exist between the contractor and the convict laborers, and their presence at all times within the prison walls, and their opportunities of interfering with the discipline of the prison, the contract is not personal in its character. There the general discipline and government of the prison and the prisoners was with the warden and other officers, while here, so far as any judgment or discretion is to be exercised, it was with the. city inspector. The circumstance that by the statute in this case the contract was to be awarded as the common council should deem for the best interests of the city, does not distinguish this case from those referred to. This provision did not refer to the person of the contractor, but to the terms of the contract. It was not intended to enable the common council to be a respecter of persons and to give the contract to favorites, but to give them a discretion to choose between different proposals, relieving the authorities from the necessity of awarding the contract to

the lowest bidder irrespective of the terms of the contract, the security offered, or the fairness or sufficiency of the compensation to insure performance with reasonable certainty. This statutory provision does not change the character of the work or import into the contract any unusual terms, or destroy its assignability. The assignment of the contract and the interest of the contractor under it did not terminate the agreement or authorize its rescission or abandonment by the city.

The other objection deemed fatal to the action and entitling the respondents to final judgment, is to the validity of the statutory enactment authorizing the contract. It is claimed and insisted that it is violative of section 16 of article 3 of the State Constitution declaring that no local bill " shall embrace more than one subject, and that shall be expressed in the title."

This provision of the fundamental law has been commended as an efficient and necessary preventive of the combination of different interests to enact a single law embracing several distinct matters of a local or private character, and to secure an intelligible and fair statement of the purposes and objects of a proposed law that both legislators and the public may understand and know the subject-matter of, and the general object to be effected by, proposed legislation. If the act and the title are so framed in relation to each other, and the objects expressed or indicated by the one and enacted by the other, as fairly to give effect to this provision, and prevent the evils in the mind of its framers, and intended to be remedied, the act will not be held invalid. It has repeatedly been said by different judges, and effect given to the declaration by the judgment of this court, that the title need not be an abstract of the act, disclose its details, or declare the machinery or modes of procedure by which the act is to be carried into effect, and its object accomplished. The subject of an act is that concerning which it is enacted; and not the substance of the act itself. The subject of an agreement is the thing which is the object of the agreement,

as the subject of a discussion before, or enactment by, the legislature, is the thing which is the object under discussion or of the enactment, and not the result of the one or the other. If the title of an act fairly and reasonably discloses what the legislation concerns, or the matter with which it deals, and indicates its purpose, the constitutional requirement is complied with. This general principle has been so repeatedly affirmed in this court that it would be work of supererogation to cite the cases. It has uniformly been asserted, and never been questioned.

The general purpose or subject of the act in which the provision now challenged is found, is the support of the government of the city and county of New York. As expressed more at length in the title, it is to authorize the raising of money by tax, and to regulate the expenditure thereof. The title fairly indicates the general purpose and object; that is, the subject of the act, as being the providing of ways and means, and directing their appropriation for city purposes, the whole subject being so intimately connected in all its details that the one branch could not be separated from the other. An act to raise means for the support of the city government would be incomplete and imperfect without the necessary direction for the application and appropriation, a declaration of the purposes for which the means are raised, and to which they shall be applied. One bill was not necessary to levy the taxes and another for disposing of them when collected. That would forbid that a tax for municipal purposes should be levied without as many bills as there were local objects to be cared for, or purposes to which the tax should be applied, notwithstanding all were parts of the ordinary expenses of the city government. Many things may be and are embraced within the same subject, within the meaning of the clause of the Constitution under consideration. An act of the legislature, entitled "In relation to the fees and compensation of certain officers in the city and county of New York," was held single, and its subject sufficiently expressed in the title, although it gave to the several officers named

salaries in lieu of fees, and directed the fees before then received for their individual use to be collected by them and paid into the public treasury, and by the same act power was given to the board of supervisors to increase or diminish the salaries fixed by the act. (*Conner* v. *Mayor, etc.*, 1 Seld., 285.) It was held in *Sun Mut. Ins. Co.* v. *The Mayor, etc.* (4 Seld., 241), that the title of an act entitled " An act to enable the supervisors of the city and county of New York to raise money by tax," authorizing a.tax to be assessed upon the city, and directing a portion of it for certain specified purposes to be assessed upon a particular part of the city, was in compliance with the section of the Constitution in question. The court held that the act embraced but one subject, the levying of the tax; that the mode of treating it need not be stated in the title. An act entitled " An act for the relief of James Ley & Son," authorized the common council of Syracuse to assess and collect, in the same manner as the expenses of constructing a sewer were by law authorized to be assessed and collected, a specified sum, and to pay it to James Ley & Son for the construction of a sewer, was held valid as embracing but one subject, and that expressed in the title. (*Brewster* v. *Syracuse*, 19 N. Y., 116.) The thing to be accomplished was held well expressed. The different steps by which the end was to be accomplished were not distinct subjects.

An act entitled " An act relative to contracts by the mayor, aldermen and commonalty of the city of New York " was sustained and held valid against the objection that it did not conform to the provision of the Constitution in question, although the act transferred the power relative to assessments and assessment lists·from the common council to a board of revision, constituted by the act. The court held that the directions as to the manner of raising money by assessment including a change in the body for the revision of the assessments to pay for the performance of the contract, was a part of the one subject expressed in the title. (*In re Volkening*, 52 N. Y., 650.) The same principle was adjudged and applied to special provisions in an act with a title similar to·

that now challenged, for limiting and curtailing one class of expenditures and restricting the power and authority of the city officials, in *In re Astor* (50 N. Y., 363).

A matter that is fairly incidental to the general subject expressed in the title may be regarded as included within it. (*People* v. *Briggs*, 50 N. Y., 553.) The same principle is reaffirmed and applied to acts of an essentially different character from the local and municipal acts before referred to. (*People* v. *Dudley*, 58 N. Y., 323, and *Wenzler* v. *People*, id., 516.) No adjudged case of authority can be found in conflict with those quoted, or which does not entirely harmonize with the rule of construction and decision which prevailed in these cases. Isolated expressions of judges may be found which, separated from the context and the particular statutes under discussion, might seem to conflict with them, but when rightly understood in reference to the subject under consideration they are all capable of an interpretation in entire accord with the cases cited, and the validity of the act now before us. The subject of the expenditure of moneys for cleaning the streets, and the making of contracts for that service was clearly embraced within the words of the title of the act. The levying of the taxes, and their expenditure thereof, for the purposes and in the manner, and under the restrictions declared by the act, constituted but one subject. The act did not propose to, nor did it, change or alter the charter of the city. It did not effect so great a change in the powers and duties of the city officials as did the acts held valid in several of the cases cited, *supra*. The permission to the common council to make a contract for a term of years, was regarded by the legislature as necessarily incidental to a letting of work by contract at all, for the obvious reason that no person could take a contract for a single year, and incur the large expenditure necessary to perform it, except upon terms ruinous to the city. The privilege of letting the work for longer than a single year was necessary to secure a taker upon reasonable terms. The act did not touch or in any way affect the charter or governmental organization of the city,

or vary the powers or duties of its governing body. It merely took a single work, for which means were provided by tax, out of the general law requiring all contracts to be let to the lowest bidder. This was but the regulation of the expenditure of a portion of the tax authorized by the act, and within the title. The act was constitutionally passed and valid.

The claim that the city was justified in terminating the contract by reason of the failure of the contractor to sweep the streets during the winter, when ice and snow covered the ground, is untenable. The contract made reasonable provision for the services to be rendered by the contractor during such times when in the nature of things a full and literal compliance with the requirements of other clauses of the contract regulating the hours and time of sweeping the streets was impracticable. The seventh clause of the contract gave the measure of the service to be performed during the winter, and by it the contractor was only required to keep the streets reasonably passable for vehicles, and the crosswalks and gutters intersecting the same clear of snow and ice. The parties by their agreement having made special provision for the service during the winter months, by which the sweeping of the streets was suspended, and a modified service substituted for the more full and elaborate cleaning and sweeping of the summer, the intervention and dispensation of the city inspector was not necessary to relieve the contractor from the sweeping during that season. The contracting parties assumed that the performance of such work would be impracticable as well as unnecessary during the winter season, and therefore dispensed with it. The referee rightfully construed the agreement in this respect, and by no other interpretation could effect be given to the seventh clause of the contract, and with this construction every part of this instrument is harmonious.

That the contractor for performing the work, upon the unjustifiable abrogation of the contract, was entitled, notwithstanding the wrongful act of the city, to the profits and advantages

which would have enured to him as the direct and immediate fruits of the contract, had he been permitted to perform the same, is not disputed. These were the inducements to the contract in the minds of the parties, and the right to them was as absolute as would have been his right to the stipulated compensation upon a full performance. The measure of damages in an action for a violation of an executory agreement is too well settled by authority to require discussion, and the rule adopted by the courts commends itself for its simplicity, as well as equity and good sense. It secures to the injured party as a compensation only such advantages as the parties must be deemed to have had in their minds in making the agreement, and excludes all contingent and uncertain profits, every thing that may not reasonably be supposed to have been within the contemplation of the contracting parties and would not naturally follow the breach. The party who has been wrongfully deprived of the gains and profits of an executory contract may recover as an equivalent, and by way of damages, the difference between the contract-price, the amount which he would have earned and been entitled to recover on performance, and the amount which it would have cost him to perform the contract. (*Masterton* v. *The Mayor, etc.*, 7 Hill, 61; *Clark* v. *Same*, 4 Comst., 338; *Griffin* v. *Colver*, 16 N. Y., 489; *Messmore* v. *The N. Y. Shot and Lead Co.*, 40 id., 422; *Cassidy* v. *Le Fevre*, 45 id., 562.) The referee professes to have adopted this rule as the measure of damages, but evidence was given, over the objection of the city, as showing, or tending to show, what it would have cost the contractor to perform the agreement on his part at the prices at which the contractor had sublet large sections and parts of the work. The agents of the city, in agreeing to the prices specified in the contract for the services to be performed, could only have had in their minds the actual and fair cost of the work to the party by whom it should be performed, and the profits to which the contractor would be entitled upon that basis. Any incidental advantages which the contractor could secure by favorable

contracts for parts of the work were not in the minds of the parties, and cannot avail to the party seeking damages for the violation of the agreement. Such a contract is not evidence for any purpose against the party who has only undertaken for damages, upon the principle and measured by the rule referred to. It is no evidence that the actual and fair cost of the work would not be greatly in excess of the price agreed to be paid the sub-contractor; and there can be no certainty that the contract would be performed, and the actual gain to the original contractor be the difference between the amounts stipulated in the two contracts. A party is not entitled, in seeking compensation for the loss of gains upon a breach of the contract by the other party, to the benefit of or to be indemnified against a contract made with third persons, not in the contemplation of the parties when the agreement was made. (*Masterton* v. *Mayor, etc.; Griffin* v. *Colver; Cassidy* v. *Le Fevre, supra; Blanchard* v. *Ely,* 21 Wend., 342; *Myers* v. *Burns,* 35 N. Y., 269.) The advantages and benefits of the sub-contracts are quite too uncertain and contingent to be taken into consideration in estimating the profits the original contractor might have made under his contract.

The objection to this evidence was very distinctly taken in behalf of the city and the objection as distinctly overruled, and we cannot say that it did not influence the result, or that it was rejected by the referee in awarding the damages. Although each question was not objected to, the counsel for the city objected to the first two questions calling for it, and the referee does not seem to have passed upon the objection at that time. The witness then, in answer to these and three or four other questions immediately following, gave the objectionable evidence. The case then states, " Mr. McKeon objects to the whole of this testimony," and this statement is evidently but a repetition of the objection taken to the first questions leading to the subject, and shows that the counsel had not waived his objection or acquiesced in the evidence. A motion was then made to strike it out, and the objection and motion were

overruled and an exception taken. The objection was seasonable and the exception well taken, and the action of the referee shows that he regarded the testimony as competent and material and leaves no room to doubt that he gave force and effect to it in computing the damages. The city is entitled to the benefit of the objection and exception, and to a new trial for this error.

The judgment of the court below, for the city, must be reversed; but so much of the judgment as reverses the judgment of the referee must be affirmed and a new trial granted, costs to abide event.

All concur.

Judgment accordingly.