FANNIE J. GOEPEL, Appellant, *v.* KURTZ ACTION COMPANY, Respondent.

First Department, November 9, 1917.

Sale — breach of contract by buyer — measure of damages — prospective profits of seller on goods to be manufactured — evidence — fact that buyer knew that goods were to be manufactured for seller — cost of manufacture.

Where a buyer makes a breach of an executory contract of sale by refusing to allow the seller fully to perform, the seller may recover as loss of profits the difference between the market value or market price and the contract price if the goods were on hand or purchasable in the market, but if they were to be manufactured for the seller he may recover the difference between the reasonable cost of manufacturing and the contract price.

In an action to recover such loss of profits it was error to exclude evidence to the effect that the goods to be sold to the defendant were not then manufactured and in stock, but were to be manufactured for the plaintiff and that the defendant was aware of this fact.

A special contract between the plaintiff and the manufacturer, which made the cost of the goods to her ten per cent less than the contract price, was not binding on the defendant unless when the contract of sale was made the other contract was within the contemplation of the parties.

It was error to exclude evidence of the cost to the manufacturer for producing the goods which were to be delivered to the plaintiff for resale to the defendant, for, while the plaintiff is only entitled to recover the reasonable cost of manufacture, the actual cost was some evidence of the reasonable cost.

Evidence examined, and *held,* sufficient to justify a finding that the contract
of sale was made with knowledge that the plaintiff intended to have the
goods manufactured for delivery to the defendant and that the dismissal
of her cause of action for loss of profits was error.

PAGE and SHEARN, JJ., dissented, with opinion.

APPEAL by the plaintiff, Fannie J. Goepel, from a judgment
of the Supreme Court in her favor, entered in the office of
the clerk of the county of New York on the 13th day of
February, 1913, upon the verdict of a jury rendered after the
court had granted defendant's motion to dismiss the first
cause of action set forth in the complaint, so far as it con-
cerned profits which plaintiff claimed to have lost.

*Robert J. Robeson,* for the appellant.

*John De Witt Warner,* for the respondent.

LAUGHLIN, J.:

The complaint contains two counts; the first is for goods
sold and delivered under an express contract and for damages
for loss of profits caused by defendant's failure to allow
plaintiff fully to perform an executory contract, and the
second is on a *quantum meruit* for other goods sold and delivered.
At the close of plaintiff's case the court dismissed her claim for
loss of profits and she recovered on her remaining claims;
and on the verdict judgment was entered for the amount of
the recovery and dismissing her complaint for loss of profits.
She appealed generally from the judgment but she enforced
it in so far as it was in her favor; and on defendant's motion
her appeal to this court was dismissed evidently on the ground
that by enforcing part of the judgment she was debarred
from prosecuting her appeal which was from the whole judg-
ment (158 App. Div. 879); but the Court of Appeals held
that this was error and remitted the case to this court to
consider and decide whether the trial court erred in dismissing
the plaintiff's claim for loss of profits. (216 N. Y. 343.)

The contract involved in the first count of the complaint
is in the form of an order in writing signed by the defendant
on the 7th of December, 1909. It was delivered to and
accepted by the plaintiff. It relates to ten items of piano
hardware consisting of wires, screws, spoons, brass center

pins, damper springs and spring rail springs, specifying the quantity and price of each. Following this enumeration of goods, quantities and prices the remaining part of the contract is as follows: " To be delivered January 3rd and duplicated each month during the year of 1910. Prices to hold good for the entire year, with the privilege of increasing order twenty-five per cent." The plaintiff proceeded to make deliveries under the contract until the 14th of February, 1910, when the defendant by letter requested a suspension of shipments until further notice. The plaintiff replied acquiescing in the request and stating that notice had been given *to the factory* to cease manufacturing, but requesting defendant to resume requisitions as soon as possible. On the seventeenth of February defendant requested a small shipment of center pins and regulating screws, and on the twenty-fourth of February the plaintiff wrote defendant referring to that order and stating that the factory had written her requesting advice relative to the holding up of the orders and stating that they would proceed to make up the goods so that upon their being called for by the defendant they could be forwarded immediately, and requesting information with respect to the resumption of orders. To this the defendant replied, stating that it would decline the receipt of any further shipments ordered prior to the 20th day of December, 1910, by which evidently was meant 1909. This probably was owing to the fact, as shown upon the trial, that the defendant had changed managers and its new manager was not aware of the contract in question. On the seventh of March the plaintiff wrote asking whether the defendant meant that it would decline to perform the contract of December 7, 1909, and stating that if it did plaintiff would hold it liable for all damages caused by its failure to perform and manifesting willingness and readiness to perform on her part and saying that if she did not hear from defendant by the eighteenth instant she would assume that defendant would not perform the contract and intended to refuse to accept further shipments under it. To that letter apparently there was no reply. On the fifteenth of March the plaintiff presented a bill to defendant for the balance claimed to be owing on shipments made on or prior

to February fourteenth. To this defendant replied, promising a settlement. There was, therefore, a total breach of the contract which gave rise to a cause of action in plaintiff's favor for damages consisting of the value of the contract, in so far· as it remained unexecuted, to be determined by the profits she would have made had she been permitted to perform, at least in so far as such profits may be said to have been within the contemplation of the parties.

The plaintiff in the first count of her complaint alleges that she lost the profits which she would have made on the sale of the merchandise covered by but undelivered under the contract by reason of defendant's breach and that such loss of profits amounted to the sum of $2,276.69. It is not alleged and it does not appear by the contract whether the goods were manufactured and on hand, or to be procured in the market or to be manufactured. If they were manufactured and on hand or purchasable in the market the plaintiff's loss of profits on the contract is to be measured by the difference between the market value or market price of the goods and the contract price; and if they were to be manufactured her loss is to be measured by the difference between the *reasonable cost of manufacture* and the· contract price. (*Devlin* v. *Mayor*, 63 N. Y. 8; *Todd* v. *Gamble*, 148 id. 382; *Lehmaier* v. *Standard Specialty & Tube Co.*, 123 App. Div. 431; *Isaacs* v. *Terry & Tench Co.*, 125 id. 532; *Hinckley* v·. *Pittsburgh Steel Co.*, 121 U. S. 264; *Belle of Bourbon Co.* v. *Leffler*, 87 App. Div. 302; *Roehm* v. *Horst*, 178 U. S. 1.)

Counsel for the respondent contends that the plaintiff offered no competent evidence of loss of profits. The plaintiff showed by the testimony of her son, who managed her business, that she was not a manufacturer and that on receiving the order she placed it with the firm of Blake & Johnson, who were manufacturers, and that ˙she was to receive the goods from them at ten per cent less than the contract price; that she had been acting as a sales agent for Blake & Johnson under an arrangement by which she received a commission of ten per cent on all goods of their manufacture which she sold; and that they accepted the contract in question on those terms, but billed the goods to her and she paid them therefor. It was not alleged or shown that the defendant was aware of

the arrangement between the plaintiff and Blake & Johnson, or that the contract with it was made with express reference thereto or that it knew that the plaintiff contemplated thus subletting the contract to Blake & Johnson. If the defendant was a stranger to the subcontract the plaintiff's loss of profits was not determinable by her special contract with Blake & Johnson but by the *reasonable cost* to her of filling the order. (*Devlin* v. *Mayor, supra; Isaacs* v. *Terry & Tench Co., supra; McManus* v. *American Woolen Co.,* 126 App. Div. 68.) The evidence, however, warrants the inference that defendant knew that plaintiff was only a dealer in and not a manufacturer of piano makers' supplies, for it appears that the parties had had similar business relations for upwards of a year prior to the making of this contract and that plaintiff filled the prior contracts through Blake & Johnson who invoiced the goods to her but shipped the goods from their factory direct to defendant and that it knew that such goods were manufactured for plaintiff by Blake & Johnson. Inasmuch as loss of profits on a subcontract or special contract are not recoverable unless the contract, for a breach of which damages are sought, was made with reference thereto, it would seem that such damages would be special damages and that the facts which warrant a recovery thereof should be alleged. (See *Stecker* v. *Weaver Coal & Coke Co.,* 116 App. Div. 772; affd., 192 N. Y. 556; *Howard Supply Co.* v. *Wells,* 176 Fed. Rep. 512, 516; 2 Suth. Dam. [4th ed.] § 419.) The evidence, however, with respect to placing the order with Blake & Johnson and the terms upon which it was so placed was received without objection. Later in the trial plaintiff offered like evidence in another form. She was allowed over objection and exception duly taken on the ground that it was incompetent, irrelevant and immaterial, to show what would have been the cost to her of having the order filled by Blake & Johnson. No objection appears to have been at any time made that it was inadmissible or not within the issues and none is made now. The only claim is that defendant has not been connected with the subcontract. As will be seen presently evidence was excluded which might have connected defendant therewith. The fact that the plaintiff was not a manufacturer does not affect the rule by which her loss of

profits is to be determined, and if she failed to show that she was entitled to recover the loss of profits on her special contract with Blake & Johnson, still she offered competent evidence with respect to the cost of manufacturing the goods, some of·which was received and some erroneously excluded. This is not analogous to a contract for personal services. So far as appears, it was wholly immaterial to the defendant whether the plaintiff manufactured the goods or procured them to be manufactured by others or purchased them in the market if they were on ·sale; and the general rule of damages is the same in either case, namely, that she is ·entitled to recover as profits the difference between the market value or market price and the contract price, if the goods were manufactured and on hand or purchasable in the market, and the reasonable cost of manufacture and the contract price if they were to be manufactured. (*Roehm* v. *Horst*, *supra*, 21; *Isaacs* v. *Terry & Tench Co.*, *supra*, 534.) ˙ As already observed, there is evidence of prior dealings between the parties, from which the defendant must have known that the plaintiff was not a manufacturer, and that, therefore, she contemplated having the goods manufactured by others; but if the evidence received on that subject be insufficient the court erroneously excluded other evidence offered to develop the facts with respect thereto.

The plaintiff not only offered to show that the goods were not manufactured and in stock, but that they were to be manufactured; and a conversation with the defendant's manager with respect thereto; all of which was excluded on objection interposed by the defendant that it was incompetent, irrelevant and immaterial. Had this evidence been received it might and probably would have appeared thereby that the defendant was aware not only that the goods were to be manufactured, but that plaintiff was not a manufacturer and would be obliged to procure their manufacture by others and contemplated placing the order with Blake & Johnson.

With respect to the cost of manufacture the plaintiff's son testified that the cost price of the goods to the plaintiff was ten per cent less than the contract price, but that testimony was evidently based on the special contract between the plaintiff and Blake. & Johnson and was not binding on the

defendant unless when the contract was made it was within the contemplation of the parties, which does not appear.

The plaintiff, however, did not rest on that evidence but called the general manager, who was the secretary and treasurer, of Blake & Johnson and presumably was familiar with the cost of manufacturing; and asked him among other things, "Will you state what the cost price was in December, January and February, 1909 and 1910, for the manufacture of the goods you have testified to just now by your firm?" This was objected to as incompetent, irrelevant and immaterial. The objection was sustained and counsel for plaintiff excepted. I am of opinion that the court erred in excluding that evidence. The only possible objection I see to it is that it called for the cost of manufacture to the firm of Blake & Johnson instead of what would be the *reasonable cost* of manufacturing the goods; but I think the evidence of what it would actually cost the manufacturer was some evidence of the reasonable cost of manufacture. The objection was not to the form of the question and it is not to be assumed that it was taken because the question did not call for the actual cost or reasonable cost for no such claim is made even now. The contention made by counsel for respondent now is, and it was probably the same then, that the contract between plaintiff and Johnson was one of agency and that, therefore, no loss of profits thereunder is recoverable. It may be that it cannot be presumed that the manufacture of the goods would have cost no more than Blake & Johnson were selling them to plaintiff for and that, therefore, the fact that they contracted to sell them for ten per cent less than the defendant agreed to pay therefor would not be evidence that the reasonable cost of manufacture would not be more than that amount; but the evidence so excluded, if received, would have shown the *actual* cost of manufacture and would, I think, be more satisfactory than opinion evidence as to what would have been the reasonable cost of manufacture, which clearly would have been competent. The Court of Appeals in *Devlin* v. *Mayor* (*supra*) held that where goods are to be manufactured or an executory contract is to be performed the profits recoverable for a breach in failing to allow performance is the difference between what it would have cost the plaintiff to perform and

the amount plaintiff was to receive under the contract; but that although the cost to the plaintiff is the basis for determining the damages, that may not be shown by subcontracts because there is no presumption that they would be performed or that performance of the work would not cost more than the amount to be paid under a favorable contract. If such evidence were received, it would lead to an investigation to ascertain the financial ability of the subcontractor. Moreover it might well be said that such damages would not ordinarily be within the contemplation of the parties unless the contract was made with reference thereto, that is, with notice or knowledge that performance was to be sublet. In the case at bar there is no reason to doubt the ability of Blake & Johnson to perform or to believe that they were selling to plaintiff at less than the actual cost of manufacture. It is, therefore, highly probable that plaintiff is entitled to recover at least ten per cent on the unfilled part of the contract either on the ground that the contract with defendant was made with special reference to her subletting it or that the reasonable cost of having the goods manufactured would not have been more than ninety per cent of the contract price.

Some general evidence was received to the effect that the goods covered by this contract which were not delivered to the defendant were manufactured by Blake & Johnson and billed to the plaintiff, but there is no evidence as to the disposition thereof. On that evidence the defendant claims that the measure of damages is the difference between the market value of the goods or what the plaintiff received for them and the contract price, but with the exception of one or two small lots which Blake & Johnson did not manufacture there is no evidence concerning the market value or what they were sold for, if sold, by plaintiff. Counsel for the plaintiff contends that the witnesses who testified on this subject did not intend to testify that all of the goods covered by the contract were subsequently manufactured by Blake & Johnson for the plaintiff, but only that part of the goods manufactured and delivered to the defendant for which it had not paid and for which a recovery has been had in this action. That, I think, is the fair construction of the testi-

mony; but it is immaterial, for the plaintiff, no matter what her obligation to Blake & Johnson under her contract with them may have been, owed no duty to the defendant to continue the manufacture after the defendant had repudiated the contract. If Blake & Johnson held the plaintiff to her contract with them and continued the manufacture and the plaintiff received the goods from them doubtless under the rule laid down by the majority opinion in *Isaacs* v. *Terry & Tench Co.* (*supra*) the defendant might have shown in reduction of the damages claimed by plaintiff under the general rule that she received some profit on that enterprise, but that was no part of her case, and if she had sustained a loss she could not have held the defendant thereon. It is manifest that the plaintiff has a meritorious claim for substantial damages either on the theory of loss of profits on her special or subcontract or for the difference between the reasonable cost of manufacture and the contract price; and if the evidence erroneously excluded had been received a basis for a recovery might have been shown.

I am, therefore, of the opinion that the ends of justice require a reversal and a new trial, with costs to appellant to abide the event.

CLARKE, P. J., and DOWLING, J., concurred; PAGE and SHEARN, JJ., dissented.

PAGE, J. (dissenting):

In my opinion the complaint was properly dismissed as to the second cause of action. The plaintiff was not a manufacturer of the goods contracted to be sold; hence to allow her to recover the difference between the sale price and the cost of manufacture would allow her to recover the damage that was suffered by the manufacturer and not by her. The plaintiff cannot recover for the commission which she would have received had the sale been completed, for that would have been a special damage, *i. e.*, damage that naturally, but not necessarily, flowed from the breach of the contract, which must be specifically alleged and it must have been proved that the plaintiff's agreement for the commission was known to the defendant at the time of the making of the sale contract, and hence within the contemplation of the parties.

First Department, November, 1917. [Vol. 179.

The plaintiff could not recover for the difference between the contract price and the market price because no evidence of the latter was given. I, therefore, am of opinion that the judgment should be affirmed.

Shearn, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.