MUNSELL *vs.* LEWIS.

The defendant and another person, in November, 1834, contracted with the canal commissioners to perform certain work on the Chenango canal, by October, 1836; and having commenced the work, they, in January, 1836, assigned their contract to the plaintiff, who agreed to finish the job at his own expense, for the prices stipulated for in the original contract; which upon his completion of the work were paid to him. In April, 1836, an act was passed providing for extra allowances to contractors on this canal, (*Laws* 1836, *p.* 201,) under which an award was made in favor of the original contractors, and one half the sum awarded was paid to the defendant. *Held,* that the plaintiff was entitled to this money and could recover it in *assumpsit* against the defendant.

ERROR to the supreme court. The plaintiff in error brought *assumpsit* in the court below to recover a sum of money which the defendant had received from the canal commissioners, and to which the plaintiff claimed that he was entitled. The circuit judge nonsuited the plaintiff, who moved the court below for a new trial on a bill of exceptions. The motion was denied, and judgment was rendered for the defendant. The facts in the case, together with the reasons of the court below, are stated in 4 *Hill*, 635. The plaintiff sued out a writ of error.

*J. A. Spencer,* for the plaintiff in error, relied upon the following points :

1. That the plaintiff by becoming assignee of Lewis & Weed, and performing the work which they had contracted to do, became a *contractor* within the intention of the act of April 16th, 1836. *McFarland* v. *Crary,* (6 *Wend.* 297,) and *Henry* v.

*Bank of Salina,* (5 *Hill,* 523,) were referred to as containing analogous principles.(*a*)

2. The additional payment authorized by the act referred to, was not a gratuity but an increased compensation for the work in question, and belonged to the person by whom it was performed.

3. By a just construction of the contract between the plaintiff and Lewis & Weed, the whole payment to be made by the canal commissioners was to be paid to the former. The money in dispute is a part of the payment for the work, and the plaintiff therefore is entitled to it under his contract.

*J. A. Collier,* for the defendant in error, argued the following propositions:

1. By the contract between the plaintiff and Lewis & Weed, the former was to have the benefit of the timber and stone prepared by the latter, and was bound to fulfil the contract with the canal commissioners, and was to have for his compensation the prices mentioned in the original contract with the canal commissioners and no more; and these prices he has received in full.

2. The plaintiff in error is not within the terms of the act of April, 1836. The provision was for the benefit of the contractors at the original lettings, and does not extend to sub-contractors. Nor is he within the spirit of the act. It was while Lewis & Weed held the contract that the rise in labor and provisions took place; and they and not the plaintiff were the parties whom the legislature undertook to relieve. When the plaintiff undertook to do the work he contracted in reference to the then present price of labor and materials, which is not shewn to have risen before the work was completed. The report of the canal commissioners which contains a statement of the facts upon which the legislature proceeded in passing the act bears date the 24th January, 1836, which is the same day on which the plaintiff agreed to do the work.

---

(*a*) See also *Wheeler* v. *McFarland,* (2 *Denio,* 183.)

Munsell *v.* Lewis.

GARDINER, President. The only question necessary for the decision of the cause arises upon the construction of the act of 1836. If we resort to the letter of the statute, those contractors only who entered into the contracts and who completed their jobs are entitled to the extra compensation. In this case Lewis & Weed entered into the contract. The plaintiff completed it. Neither consequently fulfilled all the conditions of the law.

In determining the rights of these parties, we must therefore resort to the equity of the statute ; and upon that it seems to me there cannot be the slightest difficulty. The object of the law was not a gratuity, but rather to provide an equitable compensation, for the unexpected advance in the price of labor, forage and provisions. In a word, the extra compensation was intended to cover extra expenses. It is hardly necessary to say, that " the rise in the prices and value of forage, provisions and labor," could affect those only who were bound to fulfil the contract, not those who were indemnified against it. The enhanced expense thus incurred (and which was the sole ground of legislative interposition) was paid by those who *did the work,* not those who signed the contract.

The learned judge who delivered the opinion of the supreme court, sustains the nonsuit by quoting the first clause of the statute. The other parts of it he seems to have overlooked. In the same way he makes the legislature exercise the very questionable power of drawing money from the public treasury for the purpose of gratuitous distribution. With all deference, I think the legislature has neither claimed nor exercised any such authority. They have said that the contractors who complete their jobs, and who, from circumstances not in the contemplation of either of the parties to the contract, have incurred extra expenses, shall be entitled to receive such further sum beyond the contract prices, as the canal board shall deem *just* and *equitable.*

According to the act there must be a *contract.* There was one in this case ; the whole equitable interest in which we are informed by the supreme court, was transferred to the plaintiff. The *job* must be *completed.* That was done, and by the plaintiff :

and the result is that Lewis, upon the production of a contract, the whole beneficial interest in which he had transferred to the plaintiff, and upon proof that it had been performed, and that the plaintiff in its completion had expended six hundred dollars for the benefit of the state more than he was to receive by the contract, obtains an award of that amount from the canal board, which the supreme court say it is not contrary to equity and justice that he should retain.

I do not so construe the statute; and I think for the reasons assigned that the judgment of the supreme court should be reversed.

PORTER, Senator. In the spring of 1836 the legislature passed a law authorizing extra allowances to the contractors on the Chenango canal. Under that law a certain sum was awarded to Lewis & Weed, one half of which Lewis had received; and this the plaintiff claims to recover in this suit. He makes the claim on the ground that he is entitled to all the advantages derived from the contract of Lewis & Weed with the canal commissioners. He must sustain his claim upon the contract he made with Lewis & Weed, and his performance of it. Beyond that he cannot go, for the obvious reason that that instrument shows to the court precisely what the parties meant when they entered into it. His rights must be measured by it; and if the money in question is embraced in it, he should recover, and not otherwise.

In order to apprehend more accurately the meaning of the parties in the terms they use in framing their agreement, we are entitled to look at the situation in which they then stood. The contract of Lewis & Weed with the canal commissioners was made in November, 1834, and from that time to January, 1836, the work on that contract had been progressing, but to what extent is not stated. They then sub-let the job to the plaintiff; and he agreed to finish it; to take the materials they had on hand, pay them for their tools and certain other expenses, and for his compensation to receive the sum then unpaid on the contract of Lewis & Weed with the commissioners. The language of their agreement is this, " Munsell is to receive the

pay from the canal commissioners for building and completing said bridges, according to the contract above mentioned," which is the contract of Lewis & Weed for building the bridges; excepting two specified sums which they had already received. This language strikes me as very explicit. The amount to be received on the contract with the commissioners must have been well understood; and the amount then received was known, and for the balance of that sum, the plaintiff agreed to perform the contract of Lewis & Weed. I perceive no difference between this mode of stating their agreement, and expressing the amount to be received in a given sum of money. Suppose their agreement had said, that Munsell should be paid for building and completing said bridges the sum of one thousand dollars; would there be a pretence for any claim on his part beyond that sum?

But it is said that owing to the rise in the price of labor and provisions, the contracts made on that canal were generally esteemed hard and losing ones, and it cannot be supposed that the plaintiff, with a full knowledge of that fact, would take the contract from Lewis & Weed at the price stipulated to be received by them. To this the answer is, that there is no proof that he did so, upon the construction that I have given to the agreement. There is nothing in the case to show how much had been expended upon the contract by Lewis & Weed, nor what the cost of the materials was which they had furnished, and which passed to the plaintiff. If Lewis & Weed considered it a hard contract, and thought it an object to sub-let it, they may have thrown in, and for aught we know did throw in, some part of their expenditures and the price of their materials, to induce the plaintiff to make the bargain. It appears that previous to the making of this agreement, an application had been made to the legislature by some of the contractors upon this canal, for extra allowances; and it is hardly to be supposed that these parties were ignorant of that application. The application was referred to the acting canal commissioners, and their report to the assembly is dated on the same day with this agreement. It is but reasonable to suppose that if the

plaintiff contemplated any other compensation than such as had been stipulated in the contract with Lewis & Weed by the canal commissioners, it would have been expressly stated.

But the plaintiff insists that by his agreement with Lewis & Weed, he became substituted in their place as the contractor in fact with the canal commissioners; and entitled to all the rights and benefits which subsequent legislative bounty gave to the Chenango canal contractors. If the plaintiff, instead of making an independent agreement as he did with Lewis & Weed, to fulfil their contract, had taken an assignment of their contract with the commissioners, and claimed the bounty under that assignment, he could not have succeeded; for he would not have come within the terms of the act. Nor if Lewis & Weed had abandoned their contract, and it had been again let to the plaintiff at the time that he made his agreement with Lewis & Weed, would he then have been embraced within the act. For it was only certain of the contractors, those who had "entered into contracts at either of the three first lettings," who were entitled to the benefits of that act.

To authorize the plaintiff to recover this money from the defendant, I think he should produce an express and absolute promise and agreement to account to him for all the money and profits which he should receive or derive under the contract made by Lewis & Weed with the canal commissioners. I cannot perceive any ground for believing that there was any agreement of that nature.

I think the circuit judge was right in nonsuiting the plaintiff, and that the judgment of the supreme court should be affirmed.

Lott, Senator. The question presented in this case is, whether Munsell, the plaintiff in error, is entitled to the extra allowance made to the contractors on the Chenango canal under the act of April 16, 1836. That act provided that "those contractors who entered into contracts for any part of the Chenango canal at either of the three first lettings thereof, should be entitled to receive, on the completion of their respective jobs, such further sum or sums beyond the contract prices as the canal board

should deem just and equitable, in consequence of the rise in the prices and value of forage, provisions and labor, subsequent to the time of entering into such contracts respectively : but no allowance was to be made to any contractor exceeding in amount twenty per cent. on the contract price." (*Laws of* 1836, *p.* 201.)

Munsell was not a contractor with the canal commissioners. There was therefore no privity of contract between him and them. Their contract was with Lewis, the defendant in error, and Stephen Weed, and was entered into on the 29th November, 1834. On the 29th day of January, 1836, Munsell entered into an agreement with Lewis and Weed, by virtue of which he claims to be entitled to the extra allowance made by the act of 1836, above mentioned. This was an agreement on his part to fulfil the contract of the original contractors, and he was in consideration thereof to receive from the canal commissioners the price stipulated to be paid in their contract, with the exception of two small sums previously received by the contractors which they were to retain as a compensation for some timber specified in the contract. Compensation was also to be made by him for " such expenditures as they had made in tools and quarrying stone on John A. Collier's land," and he was " to have the benefit of what was done." This agreement was made prior to the passage of the act providing for the extra compensation and subsequent to " the rise in the prices and value of forage, provisions and labor" therein referred to. The plaintiff in error therefore when he entered into his obligation to perform the contract of Lewis & Weed and save them harmless, did it with reference to the state of things existing at that time; and it is not to be presumed that the compensation which he was to receive was inadequate to the obligations assumed by him.

The relation of Lewis & Weed to the canal commissioners was not however changed by this arrangement. They still remained responsible for the fulfilment of their contract, and for aught that appears were alone recognized during the completion of the job. If their agreement with the plaintiff in error had to pay him six hundred dollars beyond the original contract no one, I apprehend, would contend that he was entitled

Munsell v. Lewis.

to the extra allowance now claimed. The fact that the compensation was to be the contract price only does not alter the rights of the parties. They are to be determined by the terms of the agreement itself; and when it appears that Munsell was to receive the pay from the canal commissioners according to their contract, I cannot see upon what principle he can claim from Lewis & Weed the allowance afterwards made them " beyond the contract prices," a contingency not provided for by the agreement. It is unnecessary to inquire whether he could have secured to himself the benefit of such allowance. It is sufficient that he has not done so. I have before remarked that the responsibility of the original contractors was not altered by their agreement with the plaintiff in error. They alone were known and recognized by the commissioners ; and it is fair to presume that the legislature in passing the act in question had them only in contemplation. The allowance was to be made to "those contractors who entered into contracts for the construction of any part of the Chenango canal," &c. The object was to indemnify those contractors who had suffered loss " in consequence of the rise in the prices and value of forage, provisions and labor," subsequent to the time of entering into their contracts.

It may be true that Lewis & Weed were not, in the fair construction of that act, honestly entitled to the extra allowance made them; but that does not give the plaintiff in error any legal or equitable claims on them. I am therefore of opinion that the judgment below should be affirmed.

On the question being put, " Shall this judgment be reversed ?" the members of the court voted as follows :

*For reversal :* The PRESIDENT, and *Senators* BEEKMAN, BEERS, DEYO, EMMONS, FAULKNER, FOLSOM, HARD, JOHNSON, MITCHELL, SEDGWICK, SMITH, VARNEY—13.

*For affirmance :* Senators BACKUS, BOCKEE, DENNISTON, LOTT, PORTER—5.

Judgment reversed.