Groveb, J.
(dissenting). Two questions are presented for determination in this case. One, whether the second clause upon page 1903, volume 2, Laws of 1870, is a valid law, or in conflict with section 3, article 7 of the State Constitution, and therefore void. The other, whether a contract entered into by the State officers for the performance of work upoa any of the canals, the State agreeing to pay the contractor therefor the price fixed by an engineer as a just and reasonable compensation therefor, is a legal contract, and as such binding upon the State.
The clause in question is as follows: “ The canal commissioners are hereby required to change the sum named for removing ice and snow, and for pumping, bailing, draining, removing coffer-dams in existing contract, for deepening Erie canal from Lyall street to first lock east of Rochester, including cutting down Genesee River aqueduct, and constructing vertical wall from same to Griffith, and improving entrance to Rochester weigh-lock, to $13,500, instead of the price named in said contract.” The validity of this clause is challenged as in contravention of section 3, article 7 of the Constitution, as amended in 1854, which provides that all contracts for work and materials on any canal shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security for their performance. A recital of some facts shown by the case will present this question more clearly. In November, 1869, the relator entered into a contract with the State • for doing the work specified in the clause in question for the sum of $3,500, together with other work at prices specified in the contract. This contract was awarded to the relator, he being the lowest bidder therefor. At the ensuing session of the legislature, and before the completion of the contract, the above clause was passed in an act entitled “An act to authorize a tax of one mill per dollar of the valuation of the year 1870, for construction of new work upon and extraordinary repairs of the canals of this State.”
The relator contracted to do the work at the prices spe *384 cified in the contract, and had given adequate security to the State for its performance. It. will thus be seen that the question is whether section 3, article 7 of the Constitution, requires that work done upon the canals, upon contract, shall be contracted for at the lowest prices to be procured by honest and fair competition among contractors, and, if performed by the party obtaining the contract, done and paid for at the prices so fixed, or whether that requirement is fully satisfied by entering into such a contract by the proper officers of the State, leaving power in the legislature directly thereafter to nearly quadruple such prices, as was attempted to be done in the present ease. The mere statement of this question would seem sufficient to furnish the proper answer, when the clause in question is examined in connection thérewith. If the legislature has the power to increase the prices specified in the contract, and exercises it, a valid contract for doing work upon the canal is made, not at the lowest price fixed by competition, but at prices fixed by the legislature without any competition whatever. This, when so changed, is not the original contract entered into, but the substitution of a new contract therefor; and thus the State becomes bound by a contract for doing work upon the canal not made with the lowest bidder at the prices bid, giving adequate security for the performance, which violates the express language of the Constitution. If the legislature, by a mandatory statute, can authorize or compel the canal commissioners to increase the prices for doing work in an existing contract, entered into as required by the Constitution, I do not see why they might not, by a .like statute, compel them to make a contract with an individual for doing work upon the terms specified in the act, and thus the constitutional requirement would be entirely evaded. Indeed, I understand the position of the appellants to be, that the clause has no further effect than to require the executive officers of the State to make the original contract, when not otherwise directed by statute, as thereby required. At all events, that when once so contracted for, the entire requirement has been satisfied, although no work is done and paid for *385 according to the .terms of the contract; and that the legislature may at once interfere and direct, or itself substantially make? such subsequent contracts- for doing the work upon such terms as it sees fit. If this be so, the clause, it will be readily seen, amounts substantially to nothing. If it fails to secure performance of the work contracted for, at prices fixed by competition, if it secures nothing but the mere form of letting at such prices, it is the most inefficient constitutional provision ever adopted by this or any other government; and yet it is only this, unless it secures performance of the work at prices so fixed. Unless it was intended to secure this result, it can hardly be supposed that two successive legislatures would pass a resolution proposing the amendment containing this clause, and surely the people never would have voted for its adoption, understanding that it amounted to nothing more than to secure a formal making of a contract, while, as in the present case, if the statute is valid, the prices paid would be quadrupled by the legislature.
An argument is sought to be deduced from tne residue of the proposed amendment, containing the clause in question, for the construction contended for by the appellants, but I think the tendency of this is to show the contrary. Its purpose was to authorize the creation of a large debt against the State for the immediate- enlargement of the Erie canal. This was a question upon which the people were divided. One inducement for the insertion of the clause in question was to satisfy the people that if the debt was sanctioned the proceeds would be honestly and fairly applied to that object, instead of being largely diverted to enriching politicians and-lobbyists,, either with'the canal board or legislature, and thereby induce the- people to vote for the amendment. If the latter was- achieved by a proposition which did not secure the former, but only the mere making of contracts, never to be performed when beneficial to the State, dust was most successfully thrown in the eyes of the people, and the authors of the scheme are entitled to admira *386 tion for their ingenuity, though this can hardly.be said as to their honesty.
Some citations are made from the journals of the proceedings of the legislature, while the subject was under consideration, to show the intention in proposing the amendment in question. These would be entitled to consideration in construing a law made by that body, but amendments to the Constitution are made by the people. It is their act. The legislature merely makes a proposition for submission to the electors of the State, and the latter adopt or reject it as they deem proper. In their action they look at the language of the proposition, not one in thousands ever having seen or known or had the opportunity of knowing anything of the legislative journals. The language should-therefore be construed in accordance with its fair meaning, irrespective of anything upon the legislative journals, without any knowledge of which the people acted.
Again, it is insisted that the legislature have, for a long time, acted upon the construction claimed by the appellants, and that the executive officers of the State, in pursuance of its mandate, have acquiesced in such construction. This is true to an alarming extent, and by such means vast sums have been taken from the treasury and pocketed by individuals, to the impoverishing of the tax-payers. This argument, in a government like that of Great Britain, where the Constitution consists entirely of precedents and usages, would be conclusive; but in one where the paramount law consists of a written Constitution, solemnly enacted by the people, for the purpose of organizing the departments of government, defining and limiting their respective powers, like that of this State, it is entitled to but little weight. Here, whenever the validity of a legislative act is challenged as unauthorized or prohibited by the Constitution, reference must be had to the instrument itself to determine the question, and, if found unauthorized by that, it cannot be upheld by the previous wrongful exercise of such power for any length of time. •
Again j it is said that the construction contended for *387 will prevent the doing of work by the State through the agency of its officers, by employing men by the day, or otherwise, to perform it, and paying them a stipulated price for their labor. Not at all. The amendment was adopted in reference to the well-known practice of the State, of doing a portion of the work upon the canals, and procuring a part of the materials used, by the direct employment of men and purchase of materials by the agency of its officers, and entering into contracts for other work and materials with individuals, by which the contractors had the chance of making profits from the labor of others, and upon the materials supplied by them. The amendment clearly applies to the latter, leaving the system of repairs by superintendents, etc., to be done as before if deemed expedient. This is not work done under contract, within the meaning of the amendment.
It is said that as the amendment does not prohibit the legislature from increasing the prices in contracts made pursuant to its requirements, it may do it under the general grant of legislative power. But it is clear that when the Constitution prohibits anything, or ordains the doing of it in a specified mode, it divests the legislature of power to enact any law in conflict therewith, the same as any other department of the government from so acting; and so this court has repeatedly held. (The People v. Allen, 42 N. Y., 404; The People v. Albertson, decided by this court, in November, 1873, not reported).*
The clause of the statute in question requires the canal commissioners to increase the price, etc., and when this is done, if valid, the State becomes bound by a contract for doing work upon the canal, not made with the lowest bidder at the lowest prices fixed by competition; and thus the State is bound by a contract made in direct conflict with the Constitution. The legislature has no more power to do this, than any other department of the government.
It is further said that the action of the contracting board, *388 in regard to the letting of a large amount of work upon the canals, in 1851, under a law subsequently declared unconstitutional by this court, excited the people of the State and caused the adoption of the amendment in question, and that this would be obviated by requiring that board and other executive officers of the State to' enter into such contracts with the lowest bidders at the lowest prices. It is true that this was one of the causes of the adoption of the amendment; but to suppose that the people would gravely amend their Constitution so as to protect themselves from the efforts of the men who then surrounded the contracting board, from that board, only, and leave themselves exposed to the influence of the same men prompted by the same motives, with the legislature, is imputing to them a degree of simplicity from which I think they are wholly free. It is a fundamental rule of construction, to be applied in all its force to restrictions upon legislative power, to adopt that which will preserve its force, and not render it vain and illusory. (Smith’s Com,, ed. 1848, § 283.) Applying this principle to the present case, we find that the Constitution ordains that all contracts for work, etc., on any canal, shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security. The above principle manifestly requires that no such contracts shall be made by the State in any other way, and to hold the legislature not bound by this, would be, I think, absurd.
But the inquiry is made as to what shall be done in case a party has made a contract for doing work and neglects or refuses to perform it. The answer is plain. The State must either procure the work to be done through the agency of its officers, or make a new contract therefor with some other party, pursuant to the amendment. The defaulting contractor and his security will be liable to the State for the damages caused by the default, which should or should not be enforced by the State, determined by an upright, intelligent exercise of discretion by its officers. Adopt this course, and the heavy burden of taxation caused by the canals will be at once greatly *389 diminished. The practice of making contracts with the State for performing work upon the canals, and then going to the legislature for an increase of prices while the work is in progress, or for extra allowance after it is done, will he ended in future, as it should have been at once by the adoption of the amendment.
It is insisted by the counsel for the relator that the legislature have the power to adjust and provide for the payment of claims against the State, and that it should be assumed that the increase of price was made on account of some claim of the relator against the State. The brief answer to this is that the clause does not provide that the acceptance of the money by the relator shall operate as a satisfaction of any claim of his, if he had any against the State, and' such acceptance would not, therefore, in any way affect any of his claims. If he had any such, they will doubtless be speedily heard from by those authorized to adjust them.
The counsel further insists that the legislature may not only provide for such claims against the State as could be enforced in an action at law or proceeding inequity, in case the State was suable by an individual, but may go further and provide for others founded only in gratitude or charity, and cites the Town of Guilford v. The Supervisors of Chenango Co. (13 N. Y., 143) in support of the position. It is manifest that satisfying a claim, by the legislature, having no validity either legal or equitable, but founded only in gratitude or charity, is nothing but a gift of the public money to an individual. This requires no argument. This is the appropriation of the public money to an individual, and therefore a private act, and, as such, void by the provisions of section 16, article 3 of the Constitution, included in an act embracing more than one subject. It is therefore unnecessary to determine whether the legislature can be grateful or charitable at the expense of the people, or whether these virtues must be exercised by the people for themselves.
That the second contract, made with the relator for doing the additional work at the price fixed by the engineer, con *390 travenes the Constitution and is- therefore void, is too clear for discussion. ~
Munsell v. Lewis (2 Denio, 224), cited by counsel, arose and was decided prior to the adoption of the amendment, and has no bearing upon the resent case. The Special and General Terms of the Supreme Court were right in holding the clause of the statute in question void, and the judgment should be affirmed.
All concur with Andrews, J., except Grover, J., dissenting.
Order reversed, and motion for mandamus granted.

 55 N. Y., 50.