L. S. THOMPSON *et al. vs.* HALAWA SUGAR CO.

IN EQUITY.   BEFORE MCCULLY, J.

APRIL, 1884.

A contract for planting sugarcane by one party and grinding it by another is assignable by either, and enforceable by the assignee of each against the assignee of the other.

Sundry planting contracts construed as to amount of plantcane and ratoons to be furnished by one party and ground by the other.

Injunction will not be granted to restrain the bringing of suits in law and equity, upon the mere apprehension or fear that such suits will be brought.

DECISION OF MCCULLY, J.

The bill recites that on the 25th of October, 1879, Lyman S. Thompson, one of the plaintiffs, and T. P. Tisdale, became the lessees for a term of years of certain lands and a sugarmill in Kohala, Hawaii; that in February of 1880, Thompson assigned his interest to Tisdale, and that in February, 1883, Tisdale assigned the lease and premises to certain persons who have been incorporated, and as such corporation are the defendants. That beginning October 27th, 1879, sundry contracts were made with Tisdale and Thompson, and later with Tisdale, by sundry persons, to plant cane to be ground at the Halawa Mill, all of which contracts were successively assigned with the mill property to the defendant, and on the planters' side passed by assignment to the complainants. A particular description of the contracts and assignments will be given below. The bill alleges that by reason of these assignments, defendant corporation holds that the complainants are bound to plant, cultivate and deliver cane and ratoons as prescribed by the contracts between the original parties, whereas the complainants deny that they are so bound. That there are many parties having distinct rights or interests in the matters and things here involved, which cannot be properly decided by action at law, and that only a Court of Equity can determine whether the

complainants are bound, and to what extent, and can enforce and regulate the execution of any obligations. The bill prays for decree that the defendants' claims are without foundation in law or equity, and for injunction against prosecuting the same, or bringing actions at law or suits in equity for non-compliance or for specific performance, and for further relief.

The answer, setting forth sundry particulars of fact, is as follows:

"Said defendant reserving to itself all manner of right of exception to the manifold errors and insufficiencies of said complainants' bill of complaint, for answer says:

That it admits the execution of the various contracts and assignments named in the first eight articles of said bill, but does not admit that the tenor and legal effect of the same is correctly set forth in said bill; and for greater certainty crave leave to refer to the originals when produced.

Said respondent is ignorant as to the alleged assignment from Butler and Blaisdell to complainants, but avers that such assignment, if any, was made without the consent of respondents, or of the person through whom respondent claims, and that said Butler and Blaisdell have never been released from their liability to fully perform all of the contracts made by them, and respondent says said Butler and Blaisdell should be made parties plaintiff.

Said respondent further says that said T. P. Tisdale, respondent's lessor, in the year 1883 procured a charter of incorporation to be granted to him and his associates for the purpose of carrying on the business in which said Tisdale was then engaged, of the cultivation of sugarcane and the manufacture of sugar at said North Kohala; that subsequently to the granting of said charter, said Tisdale made a conveyance to said company, the defendant corporation, of all his interest in said business and in the leases and contracts named in said bill, he being at that time a large stockholder in said corporation.

Said respondent further says that said contract made by said Paty with said Tisdale, was assigned by said Paty with the con-

sent of said Tisdale to said Butler and Blaisdell, and said Butler and Blaisdell agreed with said Tisdale to perform and carry out the same; and that so far as the said J. M. Smith was concerned in said sale it was as agent for said. Paty, as this respondent is informed.

That said respondent denies that it has made any of the claims in regard to said contracts set out in said bill; but does claim that said Butler and Blaisdell and said complainants, if they have taken assignments of said contracts as alleged, are bound to fully perform said contracts according to the true intent and meaning thereof.

That on the 6th of December, A.D., 1882, said Butler and Blaisdell having less cane planted than the minimum amounts called for by the contract made by Philip Butler, dated October 7th, 1879, and the contract made by said Paty, dated January 1st, A.D., 1880, to wit, less than sixty-five acres of cane, made a supplemental agreement with said Tisdale, being the contract referred to in the 7th Article of complainant's bill, by which it was agreed that said Butler and Blaisdell should plant in the year 1883 forty acres of cane under said two contracts in lieu of fifty-five acres which they were bound to plant; that said Tisdale by said agreement leased to said Butler and Blaisdell fifteen acres of land for said purpose, and said Butler and Blaisdell agreed to find the balance themselves; and said Butler and Blaisdell, in consideration of said reduction, agreed to cultivate ratoons from all the fields of plant cane they then had, and to deliver the same at the mill of the said Tisdale for manufacture according to the terms of the grinding contracts above-mentioned; the said respondents aver that said Butler and Blaisdell and their assigns are bound to perform said contract.

Said respondent admits that said Philip Butler, by the agreement dated October 27th, 1879, agreed to plant yearly not less than forty nor more than fifty acres of cane, to be ground at the mill of said Tisdale and Thompson as alleged; and also admits that said Tisdale on the 1st day of October, 1881, made a lease

of certain premises at said Kohala, containing forty acres more or less; and that said Butler and Blaisdell therein covenanted to plant one crop of sugarcane and ratoons upon said premises, and to deliver the same to said Tisdale at his mill to be manufactured on the same terms as contained in the contract made by said Butler with said Tisdale and Thompson, and further agreed that the same should not be taken to be in lieu of the amount agreed upon in said contract of October 27th, 1879, but should be in addition thereto; and also admits that said Butler and Blaisdell made the agreement with said Tisdale dated December 6th, 1882, as alleged, but avers that the two "cane rights" mentioned in said agreement were said contract made by Philip Butler, of October 7th, 1879, and said contract made by William Paty, of January 1st, 1880, then held by said Butler and Blaisdell by assignment with consent of said Tisdale; and that said agreement of December 6th, 1882, was in modification of the two contracts last named; said respondent further avers that there are now standing and ready to come off, the following quantities of sugarcane, planted in pursuance of said contracts, viz.:

Under said contract with W. F. Paty, about seventeen acres of plant cane and five acres of ratoons.

Under said contract with Philip Butler, about sixteen acres of plant cane and fifty-four acres of ratoons.

Under said lease of October 1st, 1881, to Butler and Blaisdell, about fifty acres of plant cane.

That all of said sugar cane has been cultivated and brought to maturity by said Butler and Blaisdell, in pursuance of the various contracts above referred to, made and assumed by them; that the ratoons above referred to are ratoons from plant cane in the possession of said Butler and Blaisdell on the sixth day of December, 1882, and are the ratoons referred to in the agreement of that date; and that said Butler and Blaisdell are bound to deliver all of the plant cane and ratoons above mentioned at the mill of respondent to be manufactured into sugar, in accordance with said contracts.

· Said respondent is ignorant whether said complainants have taken assignments of and now hold all of the lands, leases and contracts on and in pursuance of which said Butler and Blaisdell were planting said sugar cane; but if it is true as alleged in said bill, this respondent avers that said complainants purchased with full knowledge of all the covenants and agreements contained in said leases and contracts in regard to said sugar cane, which respondent alleges run with said lands, and that said complainants expressly covenanted with said Butler and Blaisdell to fully perform all of said contracts and all of the covenants contained in said leases, and to indemnify, hold harmless and protect said Butler and Blaisdell from all lawful claims, demands and suits which might arise from said leases and contracts, and to assume any judgment which might be given against said Butler and Blaisdell on the same.

Said respondent admits that said Chapin and Thompson, in their said agreement with Tisdale and Thompson agreed to plant and cultivate upon their own land or upon land leased by them not less than seventy-five and not more than one hundred acres of sugar cane yearly, to be delivered as alleged in said bill; and avers that said Thompson is said complainant Lyman S. Thompson; that he now has ready for grinding seventy-five acres of plant cane and a large quantity of ratoons, all planted in pursuance of said contract; a portion of which has been delivered at said mill by said complainant, and that said complainant is now engaged in delivering the remainder of the same to respondent for manufacture; and respondent further denies making the claim alleged in said bill in regard to said contract; but avers that said Thompson is bound to carry out said contract, and to deliver all cane and ratoons he may cultivate in pursuance thereof up to the maximum therein named, at the mill of respondent.

Said respondent is ignorant whether said complainants now hold the premises held by said Chapin and Thompson in leasehold at the date of their said agreement, whether by assignment from Butler and Blaisdell or otherwise.

Said respondent admits that said Chapin and Thompson in their agreement with said Tisdale and Thompson further agreed to bring all the cane that during said term of ten years should be raised by them on land held by them from James Wight, P. Butler, the Kohala Sugar Company, the Independence Sugar Company, and on all other lands then held by them, to said mill of said Tisdale and Thompson, and further agreed that they would not take said cane to any other mill without the written consent of said Tisdale and Thompson.

Said respondent admits that it claims that by reason of the premises said complainant Lyman S. Thompson is bound to deliver at the mill of respondent all of the cane planted on said premises and now ready for grinding, and also that said James W. Thompson, if he has any right or title in the same, is also so bound, he having had full notice of the agreement made by said Lyman S. Thompson in regard to the same.

Said respondent further says that it is not bound to answer, and this Court will not take jurisdiction, in regard to any alleged claims as to the future or hypothetical rights of said parties under said contracts, so far as the same are not necessarily in issue in determining the rights and obligations of said parties in regard to sugar cane now ready to be taken off.

Wherefore they pray said bill may be dismissed with costs."

BRIEF OF A. S. HARTWELL AND W. R. AUSTIN, FOR PLAINTIFFS, E. PRESTON WITH THEM.

1. The complainants claim first, that they are bound in no way by the several planting agreements, neither at law nor in equity, because the contracts were personal, calling for the skill and experience of both parties to the original contracts, and are therefore unassignable.

2. The complainants are not bound on the theory that the covenants run with the land at law, or on the principle that equity will enforce the performance of the covenants against the lands in the hands of subsequent purchasers with notice, because there is no privity of estate between these complainants and respondents in respect to the lands, and secondly because

the lands obtained under the Paty and P. Butler contract are too indefinitely described to be burdened with any trust.

3. If the Court shall decide that the contracts are assignable, or that the lands are bound in equity, the complainants contend that they have fulfilled the several contracts by delivering the minimum amount of cane, although they plant the maximum.

4. The complainants submit that the only ratoons which they are bound to deliver are the ratoons from plant cane growing on the date of December 6th, 1882, and that when those ratoons have been taken off, the Paty lands and the P. Butler lands are freed from delivering ratoons of any plant cane thereafter.

5. The complainants claim that under the Chapin-Thompson contract (contract of November 6th, 1879,) the ratoons grown from plant cane on the Wight, Butler, Kohala Sugar Co., Independence Co. and lands held by Chapin and Thompson on November 6th, 1879, can be delivered elsewhere than to the Halawa Mill, because the word "privilege" used in said contract imports nothing of an obligation.

6. That under the Paty and P. Butler contracts, the complainants are obliged to deliver no ratoons, because ratoons are not mentioned in said contract.

*Argument and authorities on Point I., viz: that the contract is personal.*

Chitty on Contracts, 1363, says, contracts in which the personal acts and qualities of one of the contracting parties form a material ingredient are in general not assignable. Anson on Contracts, p. 204 to the same effect. Such contracts are not assignable at law so as to give an assignee of one of the parties any rights against the other original party. *Robson vs. Drummond*, 2 B. & Ad. 303 (Coach Case.)

Nor are such contracts assignable in equity so that the *restraining process* of a court of equity can be invoked in favor of an assignee against the other original party who is undertaking to deal with a stranger after the party with whom he originally contracted has assigned his interest under the contract.

*Stevens vs. Benning*, 31 Eng. Law & Eq., 583.

Apply the above doctrine, viz., that the contracts are personal, to this case. A corporation is substituted as one of the contracting parties in place of an individual. The liability of the corporation is that of a joint stock company limited, with a paid up capital. If the planter is damaged by reason of the non-fulfillment of the contract, he has nothing to "pounce upon" but the mill, which if it came to a "case of pouncing," would probably be worthless. The contracts, from their very nature, call for personal skill and experience. Besides, the contracts themselves show internal evidence of personal selection. Take for instance, the Philip Butler one of October 17, 1879, as an example. The parties nowhere covenant that their assigns shall do anything, the covenant is that "the party of the first part, his heirs and assigns, covenants and agrees with said parties of the second part, their heirs and assigns, that *he* will plant, etc." Again, the cane is to be delivered at the "mill of the parties of the second part," (not at the mill of their assignees.) Again, "the parties of the second part agree to give their best care and attention to the before-mentioned carting and shipping."

The same internal evidence of personal selection is to be found in the Paty Contract of January, 1880.

These contracts relate to a joint business undertaking, and the benefits to be derived from them must be greater or less according to the personal skill and experience of the parties engaged in carrying out the contracts.

The analogy between these contracts and a contract of copartnership seems to be perfect. No partner in retiring or selling out can thrust a stranger upon his co-partners against their will. That analogy should apply here.

### Point II.

The covenants do not run with the land, as there is no privity of estate between the parties, that is, Tisdale, and consequently his assigns, the respondent, had no reversion in the leasehold assigned to the complainants, except possibly the piece of land described in the Butler and Blaisdell contract of October, 1881.

*Spencer's Case*, Smith's L. C. 137, and cases there cited; *Bronson vs. Coffin*, 108 Mass. 180.

Neither are the covenants enforceable in equity against a purchaser with notice, by a bill for specific performance, because they are covenants of an affirmative character. *Hayward vs. Building Society*, 8 Q. B. D., 403; *Railway Co. vs. Gomm*, 20 Ch. Div., 562.

Nor will a bill for injunction to restrain the complainants from delivering the cane elsewhere lie at the suit of these respondents (assignees also), because the contracts are personal, and the maxim "Equity follows the law" applies even though the assignments were taken with notice.

The case of *Stevens vs. Benning*, above quoted, was a case of a bill for an injunction to restrain an author from taking his book to another publisher after having contracted with the complainant's assignor. The application for the injunction was refused.

### Point III.

The contracts are fulfilled by delivering the minimum amount of cane called for. The minimum claim is for the protection of the mill, the maximum for the protection of the planter by way of privilege; that is, if he wishes the mill to grind the crop up to the maximum, the mill must do it, though if he chooses to carry cane above the minimum elsewhere, he may do it. It is unjust to construe such contracts so as to compel the planter to deliver up to the maximum; the mill has protected itself by binding him to deliver the minimum; supposing the minimum is delivered to the mill at a loss to the planter owing to unfavorable terms; should he suffer additional loss by delivering up to the maximum? It is submitted that it was to meet just such a contingency that the maximum and minimum clause was put in.

No other construction can be put upon these clauses without writing some words into the contract. *Disborough vs. Neilson*, 3 Johnson's Cases, 81.

*Points IV and V* speak for themselves.

## Point VI.

That under the Paty and P. Butler contracts the complainants are obliged to deliver no ratoons, because ratoons are not mentioned in said contract, and because the contract of December 6th, 1882, by stipulating for ratoons, is tantamount to an admission that the Paty and Butler contract called for no ratoons, etc.

The rule which shall be laid down in this case will be applicable to all cases of like contracts, so that no matter how great the reliance upon the skill, probity, pecuniary responsibility and other important personal qualifications of the contractors, all this will either be lost or secured, according as the Court shall hold that such personal selection is or is not regarded as essential or binding. Counsel for complainants submit that it is the essence of these contracts, and is binding.

DEFENDANT'S BRIEF.   F. M. HATCH.

I. The Court is not called upon to determine any question but the rights of the parties in regard to the sugarcane now standing. All that was planted on the land formerly held by Paty is covered by the supplemented agreement of December 6th, 1882, signed by Butler and Blaisdell. There is no possible doubt as to what this refers. Butler and Blaisdell were undoubtedly bound to deliver all of the cane in their possession at the date of their assignment to Thompson.

II. Thompson is also bound to carry out Butler and Blaisdell's contracts in regard to cane now standing. 1st, because he exclusively agreed to in the bill of sale accepted by him and his brother from Butler and Blaisdell. They took an agreement of, and assumed the benefits and the obligations contained in said contracts. The intention of their grantors that they should be so bound is very plain. The wording of the assignment of the contracts, coupled with the covenant by Thompson, shows a complete understanding not open to construction or doubt.

2d. Complainants are bound as to the present crop merely from the fact of having taken an assignment of the various

leases with full knowledge of all the covenants in regard to the crop. Their liability does not depend on privity of estate. Pomeroy Eq. Vol. III; *Barrow vs. Richards,* 8 Paige, 351; *Whitney vs. Union R. R.,* 11 Gray, 364.

"By acceptance of deed and receiving the lease, they became bound to comply with the restriction and liable in equity to the owners." *Parker vs. Nightingale,* 6 Allen, 346.

In *Vivian vs. Arthur,* 1 Barn. & Cresw., 410, the owner of a mill and certain lands granted a lease of the land upon terms that lessee should pay rent and also do suit at lessor's mill by grinding there all the corn that should grow upon the demised land. It was held that the doing suit to the mill was in the nature of a rent reserved and incident to the reversion at common law, and that the implied covenant to render it ran with the land and the reversion, so long as the ownership of the mill and the land belonged to the same person, consequently the assignee of the reversion in both could sue upon it. Chitty on Contracts, p. 1390 (11th edition). In the case at bar the defendants hold the mill and the reversion of premises leased to Butler and Blaisdell by agreement of October 1st, 1881, also of the fifteen acres named in contract with Philip Butler, of October 27th, 1879; also of the fifteen acres in agreement of December 6th, 1882, all now held by complainants with notice. L. S. Thompson was a party to the Butler and Paty contracts, and is estopped to deny notice.

The assignee of a chose in action takes it subject to all equities existing between the original parties. Do. 1366.

III. The contracts were assignable and complainants are bound to defendant corporation.

All contracts and choses in action are assignable, except the small class restrained by public policy, and where personal skill and professional services are contracted for.

*Devlin vs. Mayor of N. Y.,* 63 N. Y. 17. This was a contract to keep the streets clean. The Court say, p. 19, it was not possible to be performed by plaintiff in person. So here Tisdale did not undertake to boil the sugar himself. The whole service

was to be performed by workmen. It is absurd to say that such an undertaking as this planting contract was based on the personal skill of either party. The records of this Court show the bitter hostility of the parties.

The common law doctrine that a chose in action cannot be assigned has degenerated into a mere form which in equity is entirely disregarded. Story Contracts, p. 376A.

A Court of Equity will decree specific performance of a contract in favor of an assignee of the benefit of it. Chitty Contracts, p. 1360.

"The power to assign and to transmit to personal representatives are convertible propositions." *Bixbie vs. Wood,* 24 N. Y., 612; *Zabriskie vs. Smith,* 3 Kern., 333.

Would it be pretended that the personal representative of L. S. Thompson could not compel defendant to take and grind cane planted by him under contract of November 6th, 1879? There can be but one rule of construction, which must be applied equally to the benefits and obligations under the contracts.

Contracts for the labor of prisoners may be assigned. *Horner vs. Wood,* 23 N. Y. 355.

The three principal contracts are made in favor of the heirs, executors, administrators and assigns of the parties of the first and second parts. This was not commented on by complainants' counsel. It is most earnestly urged that this is decisive of the whole question. The Court cannot make a new contract for the parties. To support the contention of the complainants, not only must new terms be interpolated, but the express terms must be disregarded, which cannot be done. See *Chapin vs. Tisdale,* 5 Haw., a case arising out of one of these very contracts.

IV. Relief prayed for cannot be granted. An injunction will not be issued to restrain a suit in equity. High on Injunctions, § 52. Nor to restrain an action at law unless such action is brought and pending, and then only for the well-known grounds, none of which are shown by this bill. High on Injunctions, Sec-

tions 45 and 64. *Wagon Co. vs. Lea*, L. R. 5 Q. B. Div., 149. This case materially limits the coachmakers' case, *Robson vs. Drummond*, 2 B. and Ad., 303, cited by plaintiff.

The question is of immense interest to all of the sugar planters and mill owners in the country.

### BY THE COURT.

The Court is asked by both parties to give "an intimation" of its views upon the effect of the contracts, in view of the assignments which have been made of the mill property and grinding contracts on the one part, and of the planting side of the contract on the other. The proceeding may be treated as an amicable one to obtain construction, and to prevent further litigation. I do not understand that either party is charged by the other with having yet violated its obligation towards the other. The defendant holding the mill property is ready and desirous to take the cane and ratoons as contracted for with the plaintiffs' assignees, and the plaintiffs have not yet taken them to any other mill.

I am of opinion that the plaintiffs' prayer for injunction to restrain defendant from prosecuting or bringing actions at law cannot now be granted upon the mere apprehension or fears of future actions. High on Injunctions, Section 64. Neither can there be an injunction against suits in equity. *Id.*, Sections 45, 52 and 64.

Upon the question of the assignability of contracts on the one part to grow cane, and on the other to grind it, as being within the description of contracts made upon personal choice of the parties respectively, there are certain strong and reasonable considerations why the view should be taken that such contracts are not of unassignable character, if that view can be supported on principle and by authority. It is a supposable case that a sugar mill be established that shall be entirely dependent for its business on cane planted on contracts with its owner, and that it be established on the faith of such contracts made previously. A large amount of capital is held invested for many years. It would be an unfortunate position if the owner of it could

not sell it to other parties, could not alienate to a corporation, or that upon his death the contracts for cane upon the execution of which the profit and the value for the most part of the buildings, machinery and everything constituting the mill plant, should become invalid. So of the contract to plant cane. It involves a large outlay. I take the case of its being entirely dependent for realization on grinding at the mill with the owner of which it contracted. It would be equally unfortunate if a change of ownership was for any reason desirable or necessary, or made by act of law, or by act of God, through death, that the property should become of no value in the hands of assignees or heirs.

: But I have no doubt, on principle and authority, that such contracts may be assigned on both parts. On the part of the mill owner the contract was to receive the cane at the mill and manufacture it into sugar and molasses. No part of this can be supposed to be done by the personal labor of Dr. Tisdale, who contracts for it. It is done by his employees. One of the most important of these is the sugar-boiler, yet it will not be claimed that the contract contemplated that the sugar-boiler then employed should be retained during the entire term of the contracts, or that Dr. Tisdale was not at liberty to make such changes as to him and as to any of his employees who must execute the work, as he saw fit or might be necessary. In saying this I do not overlook the choice, the selection for personal qualities of such mill owner, by the cane planter, which may have its influence in the first instance. Yet it is reasonable to hold that such choice must be made subject to the contingencies of a change of ownership in the course of a term of years.

The plaintiffs on this point cite the leading case of *Robson vs. Drummond*, 2 B. and Ad., 303, wherein a contract to furnish the defendant with a coach for five years, and keep the same in good order, was held not assignable. In a recent case, *British Wagon Co. vs. Lea*, Law Reports Q. B., Vol. V., 149, January 13th, 1880, the Court per Lord Cockburn, C.J., say of that case: "We entirely concur in the principle on which the decision in

*Robson vs. Drummond* rests, namely, that when a person contracts with another to do work or perform service, and it can be inferred that the person employed has been selected with reference to his individual skill, competency or other personal qualification, the inability or unwillingness of the party so employed to execute the work or perform the service, is a sufficient answer to any demand by a stranger to the original contract of the performance of it by the other party, and entitles the latter to treat the contract as at an end, notwithstanding that the person tendered to take the place of the contracting party may be equally well qualified to do the service. Personal performance is in such case of the essence of the contract which, consequently, cannot in its absence be enforced against an unwilling party. * *" The Court saying that the principle did not apply to the case before it, says: "While fully acquiescing in the general principle just referred to, we must take care not to push it beyond reasonable limits. And we cannot but think that in applying the principle, the Court of Queen's Bench in *Robson vs. Drummond* went to the utmost length to which it can be carried." *Devlin vs. Mayor of New York,* 63 N. Y., 17, supports the assignment of a contract to sweep the streets of the city, the Court saying: "Parties may in terms prohibit the assignment of any contract, and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations. But when this has not been declared expressly or by implication, contracts other than such as are personal in their character, as promises to marry or engagements for personal service requiring skill, science or peculiar qualifications, may be assigned, and by them the personal representatives will be bound."

The observations made upon the assignability of the contract to grind cane will apply with equal propriety to the contract for growing cane. It is a common business, the most prevalent agriculture of this Kingdom. Perhaps one man may cultivate better than another, but there are no secrets in the business. The cultivators may be employees, and are liable to be changed,

without affecting the force of the contract in anywise. See *Munsell vs. Lewis*, 2 Den., 224, which supports assignment of contract for repair and construction of canals, a business probably involving more scientific skill and special experience than cane culture. In contracts of the kind we are considering, the interests of both parties are in unison, for it is equally the interest of the cane planter to produce good cane of which he is to have one-half the proceeds, and of the mill owner to make the most and best sugar of which he receives the half, so that both parties are bound by the same interest to the proper performance of their contract.

I hold, therefore, that these contracts do not come within the class of those which cannot be assigned, because depending on personal qualities of the original contractors. It will be seen further that they have been made expressly assignable by their terms.

The first of the planting contracts is that of October 27th, 1879, between Philip Butler, the planter, and T. P. Tisdale and L. S. Thompson, the mill lessees. This was assigned by Butler (and Blaisdell) March 1st, 1883, to these plaintiffs. The contract is that the party of the first part, his heirs and assigns, covenants and agrees with the party of the second part, their heirs and assigns, that he will yearly and every year until the first day of January, 1877, plant and cultivate in the district of North Kohala, Island of Hawaii, not less than forty nor more than fifty acres of sugarcane. * * The parties of the second part agree to furnish the parties of the first part sufficient land not more than two miles from the mill, to plant fifteen acres of land for and during the full term of this agreement; * * the remainder of the thirty-five acres of cane is to be grown on the lands of the party of the first part. * * Rent at $3 per acre per year is to be paid for fifteen acres, the time to be computed from the time the land is apportioned until the cane is taken off and the land returned to the lessors.

The contract of Tisdale with Butler and Blaisdell of October

17th, 1881, provides that Butler and Blaisdell shall plant one crop of cane between May and October, 1882, on the whole of a certain described piece of land containing forty acres, more or less, the cane with its ratoons to be delivered at the Halawa Mill, to be ground on the same terms as set forth in the contract of Butler with Tisdale and Thompson of October 27th, 1879. A yearly rental of $3 per acre is to be paid by Butler and Blaisdell. It is stipulated that this contract shall not be considered a part of, or in lieu of, but in addition to the former contract. This contract was assigned to the plaintiffs by the plaintiffs by the same instrument of March 1st, 1883.

My view upon these contracts in respect to the several points raised, is that the cane planted, and the ratoons grown upon the land of the mill owners, rented from them, is bound by the contracts. The assignees are in the position of tenants, bound not only to render the $3 per acre, but the cane and ratoons upon shares to the lessors. This finding is limited in its application to the cane and ratoons now standing on the leased lots of fifteen and forty acres, without extension to obligation to take land or plant future crops.

The contract of October 27th, 1879, calls for "not less than forty nor more than fifty" acres to be planted. Deducting the fifteen to be furnished by the mill owners, there was to be not less than twenty-five nor more than thirty-five acres planted by Butler in the district of North Kohala, on their own land for the Halawa Mill. I am of the opinion that the assignees of this contract are bound to deliver the cane of the minimum extent, of the crop of cane or ratoons which has been planted or grown in pursuance of this contract and passed to them by the assignment. Such is the most direct interpretation to be given to its terms, and I see nothing to support any other view. A contract may be optional with one of the parties, in part or in whole, and obligatory on the other. *Giles vs. Bradley*, 2 Johnson's Cases, 254; *Disborough vs. Neilson*, 3 Johnson's Cases, 81.

Contract with Chapin and Thompson by Tisdale and Thomp-

son, made November 6th, 1879, provides that Chapin and Thompson, their heirs, successors and assigns, will plant and cultivate for Tisdale and Thompson, their heirs, successors and assigns, upon their own land not less than seventy-five acres and not more than 150 acres of sugarcane yearly, and each year for ten years, this amount of cane each year, irrespective of ratoons, and will deliver at their own expense at the Halawa Mill, "all of said sugarcane and ratoons grown upon said land." * * Chapin and Thompson covenant and agree that they will during the term, bring all of the cane raised by them on the land held by them under lease from Dr. James Wight, and J. Butler and Independence Co., and on all other lands now held by them under lease or under agreement of lease, to said mill of Tisdale and Thompson, and that they will take said cane to no other mill without written consent of Tisdale and Thompson. And it is further agreed and understood that the parties of the second part have the privilege of growing ratoons on all lands planted by them according to this contract, and the parties of the first part agree to manufacture the same into sugar the same as the above mentioned cane.

As to this contract one of the original makers, L. S. Thompson, is one of the plaintiffs. The assignees of the grinding contract hold themselves ready and demand performance. Having above expressed the opinion that such contracts are assignable on the mill part, I further see no reason why the substitution by assignment of James W. Thompson for Chapin affects the obligation of the contract upon the two plaintiffs or either of them. The assignment to James W. Thompson, or substitution, seems to be assumed as a fact and not contested, but I do not observe evidence of it. Two questions of construction of the extent of the contract are raised.

1. Does it bind the planter to deliver such ratoon cane as he raises. The plaintiffs claim that the word "privilege" used imports an option only, and no obligation. Ratoons are mentioned in the first part of the contract where it is stipulated that the planters "shall plant this amount of cane each year,

31

irrespective of ratoons," the force of which is to secure a certain amount of plant cane each year, and that ratoon crops should not be taken in to make that area. Secondly, the planters agree that they will deliver all of said sugarcane and ratoons grown upon said land to Halawa Mill. Thirdly, it is stipulated that they have the privilege of growing ratoons on all the lands they plant pursuant to this contract, and that the mill will grind them upon the like terms with plant cane.

By the common rules of construction the intention of the parties is to be gathered from all that they say upon any subject. Taking the above expressions together, the most direct and consistent meaning to be given them is that the mill is secured a certain area of plantcane every year, and that the planter may grow his ratoons to the extent he pleases, but is bound to deliver this optional quantity, whatever it may be, to the mill, and the mill is bound to grind the same.

The second question of construction is as to the quantity of plantcane for which the plaintiffs are holden. By one stipulation it is to be the crop of not less than seventy-five acres and not to exceed 150 acres planted every year, and by another they are bound to deliver all that they plant on certain leased lands mentioned, and on all other lands now leased or held under agreements for lease.

There is no evidence to show the area of the land held by the contracting planters at the date of this contract. I hold that the force of the two stipulations taken together is that at least seventy-five acres is to be planted in cane each year, but that if more is planted on these lands, the mill is entitled to it and bound to grind it up to the extent of 150 acres: the indefinite stipulation of all the cane which may be grown on the lands being controlled by the definite maximum limit.

What is known as the Paty contract was made January 1st, 1880, between Wm. T. Paty and Thompson and Tisdale, their heirs and assigns, for seven years. The agreement is to plant and cultivate yearly in the district of North Kohala, Island of Hawaii, on lands owned, leased or contracted by Paty, not less

than twenty-five nor more than forty acres.  The Paty contract was assigned to Butler and Blaisdell August 25, 1881, and by them assigned March 1, 1883, to the plaintiffs, and by the same assignments also were assigned the leases of the lands held by Paty, of which a description is given from which the premises may be definitely ascertained.

There is a brief supplemental contract of date December 6th, 1882, between Butler, Blaisdell and T. P. Tisdale, in these terms: "It is mutually understood by the undersigned that Butler and Blaisdell will plant in 1883, forty acres of cane, Butler and Blaisdell agreeing to furnish fifteen acres of land in field makai mill adjoining Dr. Wight's store.  It is further understood that in lieu of balance of sixty-five acres that Butler and Blaisdell's two cane rights call for, they have the privilege and agree to ratoon all their plantcane now growing."

The defendants counsel contends this supplement must be held to refer to the Paty contract, and the Philip Butler contract.

I think it cannot refer to the Butler and Blaisdell contract of October 1st, 1881, (1) because that plainly provides that ratoons may be raised, and therefore requires no new consideration to give that privilege; (2) because the sixty-five acres spoken of would be made by the sum of the minimum twenty-five acres of the Paty contract and the minimum forty acres of the Butler contract; (3) and there were no other contracts between the parties to which reference could be made to which this specification would conform. I therefore find it as a fact that the supplement qualifies the Paty and Butler contracts.

And I find that the plaintiffs are bound by the assignment to deliver the cane and ratoons of the Paty contract planting, as qualified by the supplemental contract.  This takes the minimum of the two contracts to which it must refer, and stipulates for the ratoons of the plantcane then growing, which must be taken to be of the previous planting under the Butler and Paty contracts, and not relating to the forty acres therein agreed to be planted in 1883, nor, as has been observed, to the ratoons of the Butler and Blaisdell contract of October 1st, 1880.

I believe I have now covered all the matter presented for adjudication. It does not seem to me to be necessary to extend the terms of this decision beyond such cane and ratoons now standing as came within its effect.

As both parties agreed in argument to ask simply the intimation of the Court upon the force of the contracts, as now held by assignment, I will not, without further hearing, make any decree.

April 1, 1884.

Upon further hearing of the counsel, the Court being asked to make some rulings more explicit, makes the following summary of its findings.

The Court is of opinion that the contracts are assignable by both parties, and enforceable by the assignees of one party against the assignees of the other party.

Secondly. That under the Tisdale-Thompson and Chapin-Thompson contract, the plaintiffs must deliver 150 acres of plantcane (the maximum) if planted by them, and also all the ratoons, because of the general clause binding the planters to deliver at the mill of Tisdale and Thompson all the cane grown on certain enumerated lands.

Thirdly. That they are not obliged to deliver the ratoons from the sixty-five acres planted under the agreement of December 6, 1882.

Fourthly. That the plaintiffs must deliver the crop of plantcane and the ratoons therefrom from the fifteen acres of land leased by the mill to the planters under the Philip Blaisdell and Tisdale contract of October 1, 1881.

The special prayers of the bill, as well as other relief being thus denied, and the finding being that the defendant has, to the extent above defined, foundation for his claims, the bill is therefore dismissed with costs.