Vanderbilt v. Little.

Edward W. Vanderbilt et al., appellants,

*v.*

Henry S. Little, receiver, respondent.

In determining the compensation to be awarded under the rule laid down in the previous decree in this cause, founded on the opinion reported in *16 Stew. Eq. 669—Held*, (1) That it was proper to treat the performed portions of the contracts with the receiver as settled and adjusted, and to take into account only the loss upon the unperformed portions thereof.  (2) That unpaid and unadjusted claims of sub-contractors, arising upon breach of their sub-contracts, ought not to enter into the account.  (3) That advances to sub-contractors ought not to be taken into account except when materials were delivered upon the sub-contract, so that such advances became expenditures in procuring materials for performing the contracts with the receiver, which were annulled with the approval of the Chancellor.

On cross-appeals from a decree of the court of chancery, made upon the advice of Frederic Adams, Esq., master.

The decree of this court, founded on the opinion reported in *16 Stew. Eq. 669,* reversed a previous decree of the court of chancery, and fixed the measure of relief to which Vanderbilt & Hopkins (who were petitioners in that court) were here adjudged entitled.

The cause was thereafter remitted, and the decree of this court was made the decree of the court of chancery.   It was then referred to an advisory master to determine the amount of compensation to be allowed petitioners in pursuance of that decree, and it was ordered that, in making his inquiry, the master might use the testimony already taken in the cause and such additional testimony as the parties might produce.

By a subsequent order Frederic Adams, Esq., a master, was substituted for the before-appointed advisory master and directed to hear the cause for the chancellor and report thereon, and advise what order or decree should be made.

The master heard the cause on the evidence previously taken and additional evidence produced by both parties, and upon his report and advice a decree was made directing Henry S. Little, late receiver, to pay the petitioners $82,562.01, with interest and costs.

From this decree both parties appealed.

*Mr. Anthony Q. Keasbey* and *Mr. George H. Adams* (of the New York bar), for Vanderbilt & Hopkins.

*Mr. Frank Bergen,* for the receiver.

The opinion of the court was delivered by

MAGIE, J.

The transactions out of which this controversy arose are set out in detail in the opinion delivered when the cause was previously before this court. *Vanderbilt* v. *Central R. R. Co., 16 Stew. Eq. 669.*

But, to make the present conclusions intelligible, it is proper to briefly recount such of the questions then presented as concern the present appeal and what was decided thereon.

When Francis S. Lathrop was receiver of the insolvent corporation, the Central Railroad of New Jersey, and empowered by the express order of the chancellor to operate its railroad and contract, in his discretion, for materials and supplies therefor, he had large transactions with Vanderbilt & Hopkins, who dealt in such materials.

At the death of Receiver Lathrop, Vanderbilt & Hopkins claimed that contracts existed between them and the receiver whereby they were bound to furnish and the receiver was bound to take and pay for a large amount of materials.

Henry S. Little, who was appointed receiver directly after, repudiated the alleged contracts and refused to receive any materials offered thereunder, because, among other reasons, he deemed the materials yet to be delivered to be greatly in excess of the needs of the railroad, and performance of the alleged

contracts on his part to be a wasteful and improvident use of the fund in his hands as receiver.

Vanderbilt & Hopkins filed a petition in the cause in which the receiver had been appointed and asked relief, either by a direction to Receiver Little to perform the contracts of his predecessor with them or by permission to sue him at law upon the contracts. The petition contained a general prayer for relief.

By the answer of the receiver there was put at issue the existence of the alleged contracts and the liability of himself and the fund in hand thereupon.

The petition was dismissed by the court of chancery, and upon appeal this court, upon a review of the evidence, found (1) that Receiver Lathrop and petitioners had entered into contracts by which petitioners bound themselves to deliver and the receiver bound himself to take and pay for large amounts of materials ; (2) that the materials contracted for were in excess of the needs of the railroad, and the contracts were, on the part of the receiver, improvident, but (3) that there was nothing to justify the conclusion that petitioners knew or were charged with knowledge of the receiver's improvidence.

It was further held that contracts made by a receiver were binding upon and could be enforced against a succeeding receiver and the fund in his hands, but that such contracts were subject to the review of the chancellor, who, if he adjudged them to be improvident, might direct the receiver to cease to perform them, or might approve the refusal of a subsequent receiver to perform them and decline to compel their performance.

These conclusions justified the refusal of the court below to compel Receiver Little to perform these contracts.

The question then arose whether the denial of any relief to petitioners was erroneous.

This was a novel question. Had petitioners' contracts been made with a private individual his refusal to accept materials contracted for would have been a breach of the contract which would have rendered him liable to an action for damages.

The contracts in question, being subject to the reviewing power of the chancellor, were not broken by his adjudging that they

were improvident, and that their further performance would be injurious to the fund; they were simply annulled and put an end to. Being thus repudiated, petitioners who had entered into them, presumed to know the power of the chancellor in that regard, could not enforce a claim for damages as against a private individual.

But the contracts were such as the receiver had discretion to make. There was nothing to indicate that petitioners were made aware that the receiver had, in making them, exceeded his powers, and the annulment of the contracts left in petitioners' hands materials rejected and materials in course of manufacture and contracted for, so that inevitable loss must ensue.

The peculiar problem thus presented was dealt with on equitable principles, and it was held that, while petitioners could not recover as for a breach of these contracts, yet that the repudiation thereof ought not to be made or approved except upon compensation made from the fund to petitioners to the extent of the loss fairly fallen on them by reason of such acts as they had done in preparing to perform their contracts up to the time they were repudiated and in consequence of such repudiation, after having taken every reasonable precaution to save themselves from such loss.

These conclusions were embodied in the previous decree of this court, which was made the decree of the court of chancery, and the question raised by the present appeal is whether the compensation awarded petitioners by the decree now under review has been fixed in conformity with the previous decree.

In reviewing the case as now presented, it is proper to state that the advisory opinion of the learned master indicates a most painstaking and exhaustive examination of the vast mass of accounts and evidence before him, and presents his conclusions on the law and facts with such perspicuity that our labors have been much lightened, and we have been enabled to deal with more satisfaction with the perplexing problems presented.

On the part of the receiver it is claimed that the master erred in his application of the former decree to the facts before him,

in four particulars. The objections thus made will be first examined.

Counsel for the receiver directed his argument mainly to the effort to show that the methods employed by the master in making up the compensation awarded were in conflict with the former decree. While his brief specifies many items which he insists were improperly included in the decree now under review, it disclaims the purpose of pointing out all the errors claimed, and asks that the decree, if found erroneous, should be reversed and the cause remitted, to be again heard.

But we think it would be unjustifiable to protract this litigation if there is before us the material upon which a final decree can be made settling the rights of the parties. We can perceive no reason why such a decree cannot be now made. The whole evidence is before us and has been considered. If we once settle the application of the principles previously laid down, there is no difficulty (except the labor involved) in determining the amount which should be awarded.

It is first contended that there was error in the mode in which the master determined the loss of Vanderbilt & Hopkins, the petitioners, by reason of expenditures made in preparing to perform their contracts. It was insisted before him that each contract should be considered as a unit, and that he should inquire what it had cost petitioners in the whole, and from that cost should be deducted (1) what they had received from the receiver for materials which had been accepted, and (2) what they had received from the disposition of materials rejected, less reasonable expenses of disposing of them.

The master did not adopt the mode contended for, but treated each contract as if, with respect to materials accepted, the transaction was one that had been adjusted and settled. He therefore based his determination upon the expenditures made in preparations for performing the unperformed parts of the contract, from which he deducted what the rejected and undelivered materials had netted to petitioners.

It is now urged that by the mode adopted profits which petitioners had made upon materials delivered were retained by

them, and it is argued that this is in conflict with the previous deliverance of this court to the effect that petitioners were not entitled to such profits as they would have made if the contracts had been performed.

But in this respect the master correctly interpreted the determination of this court.

Had petitioners' contracts been made with a private person who refused to accept materials contracted for, they would have been entitled to recover damages for the breach of the contracts, which would have included the loss of profits which they would have made by performance. The measure of such damages in general is the difference between the contract price and what it would have cost to perform the contract. *Boyd* v. *Meighan, 19 Vr. 404; Masterton* v. *Brooklyn, 7 Hill 61; Devlin* v. *Mayor &c., 63 N. Y. 8.*

But as the contracts in question were subject to be annulled, and had in fact been put an end to, it was declared that petitioners could not recover future profits which they otherwise might have made. Had any contract been wholly performed and all the materials called for been accepted and paid for, it is obvious that petitioners might have retained the profits made thereby, although the contract might have been annulled had it been brought to the attention of the chancellor. In like manner they ought not to be deprived of profits made by a partial performance of a contract which they entered into in good faith and in ignorance of any cause for its repudiation by the chancellor.

This objection cannot prevail.

Objection is next made to the alleged refusal of the master to permit the receiver to contest the existence of some of the contracts on which petitioners made claims. In his advisory opinion he declared that he considered the question to have been settled in this court.

It was stated in the former opinion that, by the bill of particulars furnished by petitioners, and the evidence then before us, it appeared that there had been delivery and acceptance of materials upon all of the thirty-four orders in question but four, which were specified. It was held that delivery and acceptance

were necessary to make a complete contract within the statute of frauds. But the decree contained nothing on this subject, and expressly directed the reference or rehearing to be had not only on the evidence then taken, but upon such as should be afterward produced.

Under such circumstances the incidental expression of opinion founded on the case as it then stood ought not to have stood in the way of a contest over any of the alleged contracts. The decree permitted the receiver to question the right of petitioners to compensation, and that right could only arise from an actual contract.

In fact, however, no evidence in respect to these contracts was rejected by the master, but whatever the receiver offered was admitted, and, notwithstanding the view expressed in his advisory opinion, considered and adjudicated on by him.

But it is further insisted that the master erred in his determination that the three orders, known in the case as Nos. 2075, 2229 and 2245, had become complete contracts.

With respect to the first two no additional evidence was offered or appears. It is argued that petitioners have admitted that none of the materials named in those orders had been delivered or accepted. The admission claimed is contained in a second bill of particulars furnished by petitioners, upon the suggestion of the vice-chancellor, after the cause was remitted to the court of chancery. The particulars were not stated under oath, and the master, after examining the evidence previously taken in regard to deliveries upon those orders, concluded that the admission was inconsistent with the sworn testimony, and treated it as inadvertently made. Upon re-examining the evidence, it cannot be said that the conclusion was erroneous.

With respect to order No. 2245, additional evidence was drawn from one of petitioners upon cross-examination. After considering it, the master concluded that it left the matter very much as it had been left by the previous evidence. Upon a reconsideration of the evidence, it does not seem so clear that the master erred in his conclusion as to justify its reversal.

The next objection is directed at the allowance of certain claims against petitioners, made by persons with whom they had contracted for some of the materials which they were under contract to deliver to Receiver Lathrop. These claims have never been paid or even adjusted.

The question thus raised is whether such claims can be taken into account in determining what ought to be paid to petitioners under the rule laid down by the previous decree.

The decree is plain in directing compensation to be made for the loss sustained by petitioners in consequence of the repudiation of the receiver's contracts, by reason of acts done in preparing to perform those contracts.

The contracts bound petitioners for the delivery of such quantities of materials that it must have been within the contemplation of the parties that petitioners would make sub-contracts for at least some of the materials. If petitioners had made their contracts with private persons, who had refused to accept the materials contracted for, the existence of such sub-contracts and their liability thereon could not have been given in evidence or taken into account in measuring the damages in an action for breach of contract. *Masterton* v. *Brooklyn, ubi supra.* In such an action it is true that petitioners could have recovered the profits they would have made by performance, and might thereby be indemnified against claims of sub-contractors. But the liability to sub-contractors is excluded from consideration in such an action, not because the profits indemnify, but because the other party had no control over the making of the sub-contracts, and ought not to be bound to make up losses thereon, as he would not be entitled to gains thereby.

Petitioners, in contracting with the receiver of an insolvent corporation, must be deemed to have been aware that their contracts might, for certain causes, be annulled and they be deprived of expected profits. But as such repudiation, in a case where petitioners were not at fault, is to be made upon compensation for loss, and as loss may follow from sub-contracts, the existence of such contracts and losses thereon may be considered and taken into account.

Vanderbilt v. Little.

The question is, What is a loss thereon?

If petitioners, to enable them to perform their contracts with the receiver, made sub-contracts which bound them to accept and pay for materials, and, upon the repudiation of the receiver's contracts, they discovered that by accepting the materials which they could only sell in market, they would be put to loss, then a sum of money reasonably proportioned to and not exceeding such loss, paid to procure releases from the obligations of the sub-contracts, would no doubt be a loss within the previous decree. Such payments were allowed in this case, as appears, with the assent of the receiver's counsel.

If petitioners were unable to procure such releases and accepted and paid for materials under their sub-contracts, and then disposed of such materials with reasonable care to procure their value, it is also obvious that if the payments exceeded the receipts therefrom, the difference would be a loss within the decree.

In such cases an actual loss sustained by reason of an act done in preparing to perform petitioners' contracts would be shown, and the amount of the loss would be ascertained and fixed.

Petitioners neither procured releases from nor performed the obligations of their sub-contracts. They refused or neglected to perform, and their sub-contractors thereby acquired a right of action against petitioners to recover damages for their breach of contract. No actions have been brought, and it is unnecessary to inquire as to the effect of a judgment thereon, in this proceeding.

The determination of petitioners' liability upon sub-contracts, of which the receiver had no knowledge or information, might be anticipated to be unsatisfactory. The evidence tending to fix the amount is, as the master pointed out, exceedingly vague and uncertain.

But assuming that the proofs show petitioners' liability and fix the amount of it with reasonable certainty, they do not, in my judgment, establish thereby a loss to petitioners within the language or intent of the previous decree. Compensation was to be made for actual loss, and petitioners could have fixed such

loss in the modes above indicated.  But the loss resulting from a mere liability to answer in damages, which they may never pay and never be called on to pay, is too hypothetical and uncertain to be taken into account.  Such damages might differ materially from the loss so ascertained and fixed.

Moreover, petitioners' liability to respond in damages to the sub-contractors did not arise from the repudiation of their contracts with the receiver.  It arose from petitioners' breach of their sub-contracts, which cannot properly be deemed the result of the act of the receiver so as to require the fund administered by him to be answerable for the damages.  For the receiver's repudiation of his contracts—a contingency which petitioners must have contemplated as possible—did not prevent their performance of their sub-contracts.  A loss consequent upon their performance would, therefore, fall within the terms of the previous decree, while a mere liability for damages for non-performance would not.

For these reasons, the decree is erroneous to the extent that it includes these claims.  There should be eliminated from the allowance to petitioners the following, viz.: the Lord claim and the Bill claim, amounting together to $2,835.53; the claim of Morrison, Thompson & Co., amounting to $3,600.46, and the claim of O'Regan, amounting to $7,439.68.  The aggregate amount of these improperly-allowed claims is $13,875.67.

The remaining objection on the part of the receiver is to the allowance to petitioners of moneys which they had advanced to persons with whom they had made or expected to make sub-contracts for materials which they intended to deliver to the receiver in performance of their contracts with him.  For some of the advances petitioners took security, others were unsecured.  The object in making the advances was to enable those persons to procure additional plant and to purchase timber land and timber rights (not for petitioners but for themselves), whereby the performance of the sub-contracts, and, incidentally, the performance of petitioners' contracts with the receiver would be facilitated. Delivery of materials upon such sub-contracts to petitioners would of course operate as a repayment of such advances, and

the expectation of petitioners, no doubt, was, that by delivery of the same materials to the receiver, they would receive again the money advanced.

Petitioners insist that the proofs show that the advances thus made cannot be recovered, either because the security taken proved worthless or because of the insolvency of the sub-contractors, or for other reasons. The proofs on this subject are, however, far from satisfactory.

Assuming that the advances are shown to be irrecoverable, the contention is, that, as by the repudiation of the receiver's contracts, they were deprived of the opportunity to obtain repayment through him, they are entitled to be reimbursed out of the fund.

The view taken by the learned master was thus expressed: " Three things must appear to entitle an advance to a place in this account—*first,* that it was actually made; *secondly,* that it was made on the credit of the particular transaction under consideration, and *thirdly,* that it was reasonable in amount, by which I mean that it was kept within such bounds that if the execution of the contract had not been interrupted the petitioners could have repaid themselves for the advance out of the proceeds of the contract. An advance in excess of this limit would plainly be based, not on the security of the contract, but on the personal responsibility of the sub-contractor." He accordingly treated such advances as made by petitioners on the credit of their respective contracts with the receiver.

But, in my judgment, this view was erroneous.

Such advances can only be accorded a place in the account when they have operated as payment for materials included in petitioners' contracts with the receiver. If, upon sub-contracts, in respect to which advances had been made, materials had been delivered to petitioners, the advances to that extent were expenditures in procuring materials to perform the receiver's contracts. If such materials have, by the annulment of those contracts, been left on petitioners' hands, and loss has ensued, such loss falls within the scope of the previous decree, and should be repaid out of the fund.

But such advances bear no relation to the contracts between petitioners and the receiver. They were not made on the credit of those contracts but on the credit of the security given and the obligation entered into by the sub-contractors. The repudiation of the receiver's contracts did not abrogate the sub-contracts. If the sub-contractors have failed to perform and to repay advances by delivering materials, the loss of the advances is not one which has resulted from the repudiation of the receiver's contracts, and does not fall within the terms or intent of the previous decree.

Advances which have been included in the decree under review, contrary to these conclusions, must be eliminated.

By the advisory opinion it appears that the master allowed advances made by petitioners to Morrison, Thompson & Co. to the amount, principal and interest, of $30,399.59. When he settled the decree the further sum of $1,530.96 was added, and the decree contained an allowance on this account of $31,930.56.

An examination of the evidence fails to disclose any satisfactory proof that materials were delivered to petitioners upon these advances. Previous advances had been thus repaid, but the balance taken into the account had not been. For this reason the amount included in the decree, in respect to these advances, is erroneously included and should be eliminated.

Petitioners further claimed advances to the amount of $18,-021.29, made to Carman & Co. These advances, they insisted, had been made under orders 1792, 2053, 2125 and 2255. The master, relying upon facts appearing by an exhibit in the cause, called "Conover, No. 2," concluded that the advances in question had been made only under order 2255. It is contended that the exhibit thus relied on was not competent evidence, but in the view now taken it is immaterial. Acting upon his theory, that advances were made on the security of the receiver's contracts, and could only be allowed when of an amount reasonably proportioned to the expected proceeds, the master found that the advances to Carman & Co. in excess of $8,828.80 were not reasonable and were not thus secured. He then, after giving credit for $4,653.80—the proceeds of the sale of mate-

Vanderbilt v. Little.

rials called for—allowed to petitioners $4,175, with interest from June 15th, 1882, to November 1st, 1891, making a total of $6,524.90.

The evidence in this case satisfactorily shows that Carman & Co. had manufactured all the materials called for by their sub-contracts and delivered them to petitioners, and that, although the accounts were not adjusted, the advances were thus practically repaid. The $18,021.29 was therefore an expenditure for materials. It appears, also, that petitioners, using reasonable diligence to dispose of such materials, were unable to obtain for them over $4,653.80, owing to their having been cut of special sizes and for other causes. The difference—$13,367.49—was therefore a loss, within the former decree. Adding interest, calculated for the same period the master did, the total amounts to $20,886.70. But of this amount the decree already contains $6,524.90. The balance—$14,361.80—ought to be added thereto.

Upon the evidence the allowance for advances to Wemple is deemed to be proper, and the decree should not be changed in that respect.

Petitioners' appeal challenges the correctness of the decree in two respects.

They first object because the master only allowed a part of their advances to Carman & Co. This objection has already been disposed of and the whole of the advances allowed according to their contention.

Their other objection respects the sum allowed petitioners for their time and labor occupied in disposing of the materials left on their hands by the repudiation of the receiver's contracts. These services were necessarily rendered, and a proper allowance therefor falls within the terms of the former decree. There is nothing to indicate that the allowance made by the master was not reasonable. The claims for moneys paid for stenographer's fees, and in other ways, in respect to the litigation, were properly disposed of by the master.

The result will appear by this recapitulation :

Vanderbilt *v.* Little.

| | | |
|---|---|---|
| The decree appealed from was for............................................ | | $82,562 01 |
| It improperly includes— | | |
| 1. Unpaid claims............................................ $13,875 67 | | |
| 2. Advances to Morrison &c........................... 31,930 55 | | |
| | $45,806 22 | |
| Which should be eliminated, and there should | | |
| be added on the advances to Carman & Co...... 14,361 80 | | |
| | | 31,444 42 |
| And the decree should stand at........................................... | | $51,117 59 |

The decree should therefore be reversed and reduced to that amount.

As each party has succeeded on their appeals neither should pay costs to the other in this court, except that the cost of printing the case for this court should be paid by both, each party paying one-half.

DIXON, J.

The questions involved in this appeal relate to the compensation due to Vanderbilt & Hopkins on the repudiation by the chancellor of contracts made with them by his receiver, for the supply of materials for the repair of the Central railroad. The ordinary rules for the measurement of damages upon the breach of contracts are rendered inapplicable to this case by our former decree, which must be taken as the controlling guide in the solution of the present questions.

That decree adjudged that Vanderbilt & Hopkins, although not entitled to the recovery of such profits as they would have made if the contracts had been carried out, were

" entitled to be made whole for such loss as shall have fairly fallen upon them by reason of such acts as they did in preparing to perform the said contracts up to the time they were repudiated, and in consequence of such repudiation, after having taken every reasonable precaution to save themselves from such loss."

The contracts between Vanderbilt & Hopkins and the receiver called for very large quantities of timber, and in preparing to perform these contracts Vanderbilt & Hopkins entered into several sub-contracts with third parties for the materials which they

were to supply to the receiver. From these circumstances the alleged losses now in dispute arise. These losses may be considered in three classes : *First.* Where the sub-contractors furnished the specified timber to Vanderbilt & Hopkins, who, in consequence of the receiver's refusal to accept it, were obliged to sell it for what it was worth in general market, where its value, because of the special shapes and sizes in which the timber was prepared, was less than its cost and less than the price due to the sub-contractors for it. *Second.* Where, on the repudiation of the contracts between the receiver and Vanderbilt & Hopkins, the latter had notified their sub-contractors not to prepare or deliver the materials bargained for, and thereby had incurred a legal liability to those sub-contractors for damages on breach of their contracts, but had not, as yet, adjusted or paid such damages. *Third.* Cases like those in the second class, except that, in order to enable the sub-contractors to perform their contracts, Vanderbilt & Hopkins had advanced to them moneys which would cover the damages to which the sub-contractors became legally entitled on breach.

With respect to the first class of cases, all the members of the court are agreed that Vanderbilt & Hopkins are entitled to recover from the receiver the difference between the price due to the sub-contractors for the materials delivered and the price realized from the sale of those materials in general market.

This concession, with our former decree, seems to make plain the rule applicable to cases in the other classes. It indicates that the making of these sub-contracts was a proper preparation for the performance of the contracts with the receiver, and that the prices fixed in them are not unreasonable.

On the repudiation of the receiver's contracts, two courses were open to Vanderbilt & Hopkins in dealing with their sub-contractors. One was to have the sub-contractors complete their contracts, and thus to become responsible to them for the contract price. The other was to countermand such completion, and thus to become responsible to them for damages on breach of contract. By the former course, the loss sustained by Vanderbilt & Hopkins would be the difference between the contract

price and the market price of the timber delivered. By the latter course, the loss would be the difference between the contract price and the cost which the sub-contractors would be put to in delivering the timber, which cost would, for reasons already stated, generally be greater than the market price. Thus, the latter course would entail less loss upon Vanderbilt & Hopkins than the former course. Plainly, I think, in so far as they adopted the latter course, they were most in accord with our decree, which required that they should have taken every reasonable precaution to save themselves from loss.

Now, in the opinion of a majority of this court, Vanderbilt & Hopkins are not to be indemnified against a smaller loss arising on their sub-contracts, although all concede that they would have been indemnified if they had so acted as to incur a greater loss. The equitable notion underlying such a discrimination I cannot comprehend.

The arguments in support of the discrimination are, I believe, two.

First, it is said that, by the sale of the material delivered, a tangible basis for calculating the amount of loss is afforded, which is wanting when the materials are not delivered.

At most, this bears only on the certainty of investigation; not on the righteousness of relief. But even on that point its influence is not serious. For, although the special forms prescribed for much of the timber were not covered by the ordinary market quotations, yet the timber not delivered was in the main to be like that which was delivered and sold, and the selling price of this afforded a fair criterion for the market value of the whole. If this value were not shown by the evidence to be less than the cost of production by the sub-contractors, then it should form the basis for calculating the loss against which Vanderbilt & Hopkins are to be indemnified in the second and third classes of contracts, as well as in the first; while if it were shown to be less, as it generally is, the loss would be diminished, to the advantage of the receiver. So that the uncertainty of proof, if any, relates only to the amount that was saved for the receiver by Vanderbilt & Hopkins when they countermanded the fulfill-

Vanderbilt *v.* Little.

ment of the sub-contracts. That seems to be a strange reason for the denial of relief. It is saying in effect that, if nothing had been saved, the court would have granted relief, but if it be uncertain how much has been saved, all relief will be withheld.

The other argument is, that although by the breach of their sub-contracts Vanderbilt & Hopkins became legally liable to pay damages, yet they do not appear to have actually paid them, and perhaps never will pay them.

In a court of equity this argument might be obviated by the court's seeing that the moneys due to Vanderbilt & Hopkins were paid directly to the sub-contractors on account of whose claims they were allowed. The arm of the court is surely not too short for this act of justice.

But the argument has no footing at all with regard to cases in the third class above mentioned. In them Vanderbilt & Hopkins had made advances to their sub-contractors in amounts which covered any claims they could make for damages on breach of the sub-contracts. These advances, to the extent of those damages, could be retained by the sub-contractors, and so far Vanderbilt & Hopkins were actually and irrecoverably out of pocket. I think it manifest that for the amount of those damages thus paid (not exceeding the loss which would have ensued if the sub-contracts had been performed), Vanderbilt & Hopkins should be reimbursed.

With regard to these advances, the master, from whose decision the present appeal is taken, adopted a more liberal view than that which seems best to me. Considering the terms of our former decree, it is by no means clear that his view is erroneous, and if it had met the approval of those judges on whose opinion the former decree was based, I would have been willing to adopt it. As, however, it is disapproved, I shall vote for the reversal of the decree below, but I do not assent to the entry of the decree now ordered. I think that, upon all their sub-contracts, Vanderbilt & Hopkins should be allowed the amount legally recoverable against them by the sub-contractors, not exceeding the amount of loss that would have been sustained if those sub-contracts had been performed.

Judges BOGERT, BROWN, CLEMENT and KRUEGER concur in the foregoing opinion.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, KRUEGER, SMITH—11.

*For affirmance*—None.